Opinion issued June 16, 2005





     




In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00411-CR




JIMMY LANCE RANDON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 937578




O P I N I O N
 
          A jury found appellant, Jimmy Lance Randon, guilty of the felony offense of
aggravated assault,


 and the trial court assessed his punishment at 15 years’
confinement. In his sole issue, appellant contends that his trial counsel was
ineffective. We affirm.
Background
          The female complainant and appellant, her next door neighbor, had a history
of problems. One morning, the complainant arrived home around nine or ten and was
greeted by a barrage of cursing from appellant. Shortly after going into her house, the
complainant noticed that appellant’s clothes were scattered throughout her backyard. 
The complainant went to appellant’s house to ask him to remove his clothes from her
backyard. Appellant answered the door holding a knife. His response to the
complainant’s request was, “F*** you, b****. I’ll kill you.”
          Noticing that Houston Police Department (HPD) officers were investigating
an unrelated incident down the street, the complainant went to the officers and
reported the encounter. The complainant told the officers that appellant had “broken
into her residence, placed some items inside her garage, and threatened her with a
knife.” The officers went to appellant’s house and attempted to speak with him. 
Appellant did not respond to the officers’ repeated knocks. Based on the facts
available to them, the officers concluded that appellant was armed and had likely
barricaded himself inside his house. Following HPD protocol, the officers requested
a SWAT team. The SWAT team tried unsuccessfully to communicate with appellant
via loudspeakers. Appellant responded by turning up the volume on his stereo. HPD
then cut the power supply to appellant’s house, and appellant voluntarily left the
house. After appellant was arrested, his father allowed an officer to go into the house. 
The officer found a knife in a bedroom. The complainant later identified the knife as
the weapon appellant had used when he answered the door.
          In pre-trial proceedings, the trial court appointed an attorney to represent
appellant. The trial court granted defense motions, which were unopposed by the
State, ordering Harris County Forensic Psychiatric Services to examine appellant to
determine his competency and his sanity at the time of the offense. In February 2003,
Dr. R. Laval found that appellant “manifested active symptoms of a severe mental
illness” and, in his opinion, was incompetent to stand trial. Dr. Laval stated that
appellant’s thinking was disorganized and his speech was loose and tangential. The
doctor opined that appellant’s cognitive functioning was compromised. However,
due to appellant’s “deteriorated mental condition” during the examination, Dr. Laval
was unable to offer an opinion regarding appellant’s mental state at or near the time
of the offense and, therefore, recommended that appellant be re-examined after his
mental state improved.
          The trial court conducted a competency hearing in March 2003. At the hearing,
a jury found appellant mentally incompetent to stand trial. The jury also found that
there was a substantial probability that appellant would attain competency within the
foreseeable future. The trial court adopted these findings and ordered appellant
committed to North Texas State Hospital (NTSH), Vernon Campus, for up to 18
months because appellant’s “conduct did involve an act, attempt or threat of serious
bodily injury to another person.”
          In July 2003, Dr. R. Brimmer, a psychiatrist at NTSH, sent the trial court a
written request to civilly commit appellant pursuant to the relevant portions of article
46.02 of the Code of Criminal Procedure. See Act of May 26, 1999, 76th Leg., R.S.,
ch. 561, § 7, 1999 Tex. Gen. Laws 3098, 3099 (repealed 2003). In his evaluation,
Dr. Brimmer described appellant’s behavior as “considerably influenced by
hallucinations and delusions.” Dr. Brimmer noted that appellant had been a patient
at Rusk State Hospital in the past and that several mental health evaluations were
conducted at that time.


 Dr. Brimmer also noted that appellant’s records included a
copy of a Letter of Guardianship from a Harris County court dated May 17, 2002. Dr.
Brimmer stated that he believed that there was no substantial probability that
appellant would become competent in the foreseeable future because appellant had
a “chronic disorder [and was] responding slowly to appropriate treatment.”
          The trial court appointed new counsel in July 2003. On the same day he was
appointed, appellant’s counsel filed two more requests for psychiatric examinations
to determine appellant’s sanity and competency. Neither of these requests was
opposed by the State. The trial court granted both motions. 
          The trial court appointed Dr. N. Decker to provide an independent mental
examination of appellant. Dr. Decker reviewed appellant’s record and conducted an
interview with him. The interview was brief because appellant became angry and
terminated the interaction after about a half an hour. Nevertheless, Dr. Decker
reported in his evaluation that, “because of the pervasive persecutory beliefs
[appellant] espoused, he clearly demonstrated a paranoid delusional system, involving
the police and the medical/psychiatric establishment.” The doctor noted that
appellant was “grossly inappropriate about the role of his attorney and, clearly, had
no ability to work with him in court, for his defense.” Based on appellant’s records
and his own observations, Dr. Decker stated he would diagnose appellant either as a
paranoid schizophrenic or as suffering from schizoaffective disorder. In Dr. Decker’s
opinion, appellant was “clearly NOT competent to stand trial and to, knowingly, act
appropriately in his defense.” (Emphasis in original.) Dr. Decker agreed with Dr.
Brimmer’s recommendation to extend appellant’s commitment for further treatment. 
          Dr. A. Abdulla, examining appellant on behalf of Harris County, filed a
Physician’s Certificate of Medical Examination. In his evaluation, Dr. Abdulla
opined that appellant was likely to cause serious harm to himself and others and that,
if not treated, appellant would continue to experience deterioration of his ability to
function independently. During Dr. Abdulla’s interview with appellant, appellant
stated that he did not need any medication.
          The trial court conducted a second civil commitment hearing in September
2003, in which Dr. Decker’s and Dr. Abdulla’s evaluations and a Letter of
Guardianship from a Harris County Probate Court were admitted into evidence.


 The
jury found appellant incompetent to stand trial. The jury also found that there was no
substantial probability that appellant would attain competency in the foreseeable
future. The trial court ordered appellant transferred back to NTSH, Vernon Campus
for up to 12 months. 
          In January 2004, Dr. M. Ferguson, a Unit Psychiatrist at NTSH, Vernon
Campus, notified the trial court that, in her opinion, appellant was competent to stand
trial. Dr. Ferguson included a written evaluation conducted by Dr. S. Shipley, a
psychologist. Before writing her evaluation, Dr. Shipley interviewed appellant for
about one hour and reviewed appellant’s medical records and ward records. Dr.
Shipley noted that appellant had repeatedly refused to take his medication, so the
hospital gave him intramuscular injections. She further noted that after appellant’s
medications were changed, appellant made significant improvements. Dr. Shipley
stated that, “[a]lthough medication compliant, [appellant] continues to voice some
complaints about his need for medication and has required repeated reassurance of
the necessity of the medication for the improvement of his psychiatric symptoms.” 
Dr. Shipley noted that appellant is at a “very high risk to suspend taking his
medication while in jail.” Dr. Shipley opined that if appellant were to stop taking his
medications completely his competency would be at issue. Dr. Shipley stated that,
“[i]t is recommended that [appellant] return to court and that his trial be initiated soon
in order to minimize the adverse impact that time in jail may have on his overall
mental state and his treatment compliance.” Dr. Shipley concluded by offering her
opinion that appellant was competent to stand trial.
          The trial court appointed the attorney about whom appellant now complains as
appellant’s trial counsel. During pre-trial proceedings, the following exchange took
place between trial counsel and the court:
THE COURT: All right. Before we take up this matter, prior to jury
selection, it is — according to the file you submitted to a competency
and sanity evaluation. Is that correct, Mr. Godinich?
 
DEFENSE COUNSEL: Yes, it is, Your Honor.
 
THE COURT: And he was found to be sane and competent?
 
DEFENSE COUNSEL: That is my understanding, Your Honor.
 
THE COURT: All right. I will make that finding at this time.

Appellant and the State agreed to a motion in limine that required counsel to approach
the bench before going into any mental health issues, any issues of competency, or
any issue of sanity regarding appellant. Trial counsel also informed the court that
appellant wished to testify. After the trial court swore appellant in, trial counsel
asked appellant if he understood that testifying would subject him to cross-examination by the State and would allow his criminal history to be presented to the
jury. Appellant said he understood.
          During trial, appellant testified that the complainant was lying. Appellant
stated that when the complainant came to his house, he was holding a knife because
he was eating lunch. Appellant testified that he had fallen asleep after lunch and did
not hear the police officers knocking on his door. In closing arguments, trial counsel
highlighted the fact that none of the police officers saw the assault, and the State was
not pursuing a burglary charge against appellant. Trial counsel implied that the
complainant had fabricated the story and that appellant had subjected himself to
cross-examination on his prior convictions in the hope of gaining credibility with the
jury.
          The jury found appellant guilty of aggravated assault. The trial court assessed
punishment at 15 years’ confinement. Appellant did not file a motion for new trial. 
This appeal followed.
 
Discussion
          Appellant makes three arguments to challenge the effectiveness of his trial
counsel: (1) counsel failed to research prior proceedings in appellant’s case; (2) he
failed to investigate an insanity defense; and (3) he ignored appellant’s rights to a jury
hearing and to an independent examination for competency. Appellant contends his
counsel’s ineffectiveness prejudiced his defense.
          In reviewing an ineffective assistance of counsel claim, we evaluate the
effectiveness of counsel under the two-pronged test enunciated in Strickland v.
Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). See Hernandez v. State, 988
S.W.2d 770, 774 (Tex. Crim. App. 1999). First, the defendant must show that his
counsel’s representation fell below an objective standard of reasonableness. 
Strickland, 466 U.S. at 688, 104 S. Ct. at 2064. To prove this deficiency in
representation, the defendant must demonstrate that his counsel’s performance
deviated from prevailing professional norms. Id. 466 U.S. at 688, 104 S. Ct. at 2065;
McFarland v. State, 845 S.W.2d 824, 842–43 (Tex. Crim. App. 1992). Second, the
defendant must show prejudice. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. This
requires the defendant to show that there is a reasonable probability that, but for his
counsel’s unprofessional errors, the result of the proceeding would have been
different. Id. at 694, 104 S. Ct. at 2068. A reasonable probability is a probability
sufficient to undermine confidence in the outcome. Id. 466 U.S. at 694, 104 S. Ct. at
2068. The failure to satisfy one prong of the Strickland test negates a court’s need to
consider the other. See id. 466 U.S. at 697, 104 S. Ct. at 2069. An appellant bears
the burden of proving by a preponderance of the evidence that his counsel was
ineffective. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). 
          We must look to the “totality of the representation and the particular
circumstances of each case” in evaluating the effectiveness of counsel. Id. In so
doing, we recognize the strong presumption that counsel’s performance fell within
the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689,
104 S. Ct. at 2065; Thompson, 9 S.W.3d at 813. As the Supreme Court observed:
It is all too tempting for a defendant to second-guess counsel’s
assistance after conviction or adverse sentence, and it is all too easy for
a court, examining counsel’s defense after it has proved unsuccessful,
to conclude that a particular act or omission of counsel was
unreasonable.

Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. To defeat the presumption of
reasonable professional assistance, “[a]ny allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness.” McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).
          We cannot speculate beyond the record provided; rather, a reviewing court
must presume that the actions taken were part of a strategic plan for representing the
client. See Young v. State, 991 S.W.2d 835, 837–38 (Tex. Crim. App. 1999). The
appellant must overcome the presumption that his trial counsel’s strategy was sound
and affirmatively demonstrate the alleged ineffective assistance of counsel. Rylander
v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); Thompson, 9 S.W.3d at 814. 
          In his first argument, appellant contends that his trial counsel did not research
the prior proceedings in the case and, therefore, did not discover that a determination
of appellant’s sanity was never completed. Appellant was twice deemed incompetent
in prior proceedings. He contends here on appeal, however, that no mental health
professional has determined whether he was sane at the time of the offense, despite
two orders to do so. Appellant asserts that “it takes no great leap of imagination to
deduce that the delusions appellant exhibited during his competency examinations
may well have influenced his actions on the date of the offense.” Thus, in his second
argument, appellant contends that his trial counsel was ineffective for failing to
investigate and present an insanity defense.
          In his third argument, appellant contends that he was entitled to a hearing on
the issue of his incompetence pursuant to former article 46.02 section 8(e) of the
Texas Code of Criminal Procedure. See Act of May 26, 1999, 76th Leg., R.S., ch.
561, § 7, 1999 Tex. Gen. Laws 3098, 3099 (repealed 2003). Appellant also contends
that he was entitled to the appointment of experts or other disinterested witnesses
under section 3 of article 46.02. See id. Appellant’s brief further argues that “there
is no indication in the record that [he] waived his right to a jury hearing, or that
anyone even considered that entitlement.” Appellant contends that his trial counsel
was ineffective for depriving him of these rights because counsel informed the trial
court that he understood appellant was competent and sane.


 
          “[C]ounsel has a duty to make reasonable investigations or to make a
reasonable decision that makes particular investigations unnecessary.” Wiggins v.
Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003) (quoting Strickland, 466 U.S.
at 691, 104 S. Ct. at 2066). Counsel’s strategic choices made after a less than
complete investigation of the law and facts relevant to plausible options are
considered reasonable, on a claim of ineffective assistance, precisely to the extent that
reasonable professional judgment supports limitations on the investigation. Wiggins,
539 U.S. at 521–22, 123 S. Ct. at 2535 (quoting Strickland, 466 U.S. at 690–91, 104
S. Ct. at 2066).
          Here, appellant did not file a motion for new trial. The Texas Court of
Criminal Appeals has held, however, that a motion for new trial claiming ineffective
assistance of counsel is not always required to preserve the claim. See Robinson v.
State, 16 S.W.3d 808, 809 (Tex. Crim. App. 2000). A timely filed appeal is a proper
procedure for seeking relief regarding ineffective assistance of counsel. Id. at 810. 
A hearing on a motion for new trial is required only when the motion raises matters
extrinsic to the record. Rivera v. State, 123 S.W.3d 21, 29 (Tex. App.—Houston [1st
Dist.] 2003, pet. ref’d). When an appellant’s allegations of ineffective assistance of
counsel are firmly founded and affirmatively demonstrated in the record, no
evidentiary hearing is required. Id.; see McFarland, 928 S.W.2d at 500. Therefore,
we address whether the record affirmatively demonstrates ineffective assistance of
counsel. See Rivera, 123 S.W.3d at 29.
          The record in this case is nearly bare as to counsel’s trial strategy and as to the
depth of counsel’s investigation. The record does not contain any motions from trial
counsel requesting a third competency evaluation. The record lacks a report from a
physician evaluating appellant’s sanity at the time of the offense. Indeed, the only
opinion made in response to the two court orders to determine appellant’s sanity was
Dr. Laval’s statement that he could not offer an opinion on appellant’s sanity because
of appellant’s “deteriorated mental condition.” The record is silent as to any further
inquiry into appellant’s competency after Dr. Ferguson’s report. Trial counsel must
have been at least somewhat aware of appellant’s mental health history and must have
done at least some research because counsel called an expert from the Texas
Department of Mental Health and Mental Retardation (MHMR) to testify during the
punishment phase of the trial. 
          Given the record before us, we are unable to evaluate the strategy of appellant’s
trial counsel to determine whether it was reasonable or not. Therefore, we cannot
determine on the basis of this record whether appellant’s trial counsel provided
effective assistance of counsel. The Court of Criminal Appeals has observed that the
record on direct appeal in ineffective assistance of counsel cases will rarely provide
the reviewing court an opportunity to conduct a fair evaluation of the merits. 
Thompson, 9 S.W.3d at 813. “In the majority of instances, the record on direct appeal
is simply undeveloped and cannot adequately reflect the failings of trial counsel.” Id.
at 813–14. As a result, the Court of Criminal Appeals has held that, “when direct
appeal has not provided an adequate record to evaluate a claim which might be
substantiated through additional evidence gathered in a habeas corpus proceeding, we
will not apply the general doctrine that forbids raising a claim on habeas corpus after
it was rejected on appeal.” Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App.
1998). This is a case in which direct appeal has not provided an adequate record to
determine counsel’s effectiveness. 
          Without a record of what additional mental health information counsel based
his trial strategy on, we cannot find him ineffective. To do so would call for
speculation. See Young, 991 S.W.2d at 837–38. When the record is silent regarding
counsel’s reasons for his conduct, we will defer to counsel’s decisions if there is at
least the possibility that the conduct could have been legitimate trial strategy. Ortiz
v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002).
          We overrule appellant’s sole issue.
Conclusion
We affirm the judgment of the trial court.
 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Nuchia, Keyes, and Bland.
Publish. Tex. R. App. P. 47.2(b).