**John Paul RIVERA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–02–00041–CR to 01–02–00043–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 28, 2003.

Discretionary Review Refused March 3, 2004.

James M. Leitner, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney—Harris County, Bridget Holloway, Assistant District Attorney—Harris County, Houston, TX, for Appellee.

Panel consists of Justices HEDGES, KEYES, and DUGGAN.*

## OPINION

EVELYN V. KEYES, Justice.

John Paul Rivera, appellant, pleaded guilty to three offenses of aggravated robbery. Following a pre-sentence investigation (PSI) hearing, the trial court assessed punishment at 20 years' confinement in each case, with the sentences to run concurrently. In three issues, appellant argues that he was denied effective assistance of counsel, that the court erred in denying his counsel at least 10 days to prepare for the pre-sentence investigation hearing, and that the court erred in not withdrawing appellant's plea of guilty. We affirm.

### Facts

*Indictments*

Appellant was charged with three separate offenses of aggravated robbery. The first indictment, Cause Number 867829,

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

accused appellant of threatening Maria Dejesus Guerrero with a knife while robbing her on May 9, 2000. The second indictment, Cause Number 867831, accused appellant of threatening Santos Mendez with a stick while robbing him on May 6, 2000. The third indictment, Cause Number 878870, accused appellant of threatening Zacarias Charon with a stick while robbing him on May 9, 2000.

### First Counsel

Brian D. Coyne was appointed as appellant's counsel. Coyne reset the cases for trial several times. He withdrew as appellant's counsel on July 17, 2001.

### Second Counsel

On July 17, 2001, appellant hired Gerald B. Scheve. On August 16, 2001, appellant entered a plea of guilty in each case without a plea bargain. In each case, appellant signed a sworn "waiver of constitutional rights, agreement to stipulate, and judicial confession" that, among other things, waived a jury and included the statement, "I intend to enter a plea of guilty and plead guilty to aggravated robbery with deadly weapon to a presentence investigation[,] unlimited argument." [Sic.] Appellant also initialed each of the applicable admonishments. He thus acknowledged in each case that, if convicted of a first degree felony, he faced a term of five years to 99 years or life in prison and a fine not to exceed $10,000. Finally, appellant initialed his understanding of the consequences of his plea and his acknowledgment that he had fully consulted with his attorney, that he understood the admonishments, and that he was "totally satisfied with the representation provided by my counsel and I received effective and competent representation."

The PSI sentencing hearing was scheduled for October 23, 2001, and subsequently reset to November 15, 2001. On November 15, Scheve failed to appear in court. His secretary called in for him, stating that he was ill, and the PSI hearing was rescheduled to November 26. Again, Scheve called in sick, and the PSI hearing was rescheduled to December 10. On December 10, appellant appeared in court without an attorney, and the hearing was again postponed.

On December 12, 2001, Scheve filed a request to withdraw as counsel. In his written statement, Scheve stated that he had been suffering for two years from an illness that affected his ability to walk and that Judges Belinda Hill and Jeannine Barr had insisted that he employ an associate to help with his cases. His associate had left in May, 2001. Since November 1, 2001, he had suffered from dizziness, apparently caused by his medication, that affected his ability to walk and to think. On December 13, 2001, the trial court granted Scheve's request to withdraw as counsel.

### Third Counsel

On December 12, 2001, the court appointed Layton Duer as appellant's new counsel. The sentencing hearing was reset for December 21, 2001, nine days after Duer's appointment. Duer did not request additional time to prepare for the hearing.

At the commencement of the sentencing hearing, the court announced that Duer had had an opportunity to examine the PSI report and asked whether he wished to add anything. Duer declined, but asked that appellant be sworn as a witness. Duer elicited testimony from appellant that he had visited appellant in jail on the day he was appointed, that they had then discussed the PSI report, and that Duer had subsequently talked with appellant about his court appearance. Duer then gave appellant an opportunity to read a prepared statement asking the court for

leniency and afterwards began his direct examination of appellant.

After eliciting testimony that appellant had been in jail for 18 months, Duer made the following statement:

Q [Mr. Duer]: Now, *I'm not familiar with the offenses in these cases.* What I have read is the summary of the offense reports that are included in the PSI that I have here in front of me. As I understand it that *you were never accused of actually having any sort of a weapon in your possession; is that correct?*

A [Appellant]: That's correct.

Q [Mr. Duer]: Is it true that during these three episodes, three robberies, that *you never actually had a weapon in your hand?*

A [Appellant]: I never had a weapon.

Q [Mr. Duer]: Did you ever personally injure anybody during any of these episodes?

A [Appellant]: No.

Q [Mr. Duer]: Now, I understand also that *you do have no prior criminal record; is that correct?*

A [Appellant]: That's correct, sir.

(Emphasis added.)

In response to these questions and answers, the trial court directed Duer to pages six and seven of the PSI report, which stated that appellant had been convicted for theft and escape while in custody for assault/domestic violence. These reports demonstrated that appellant's testimony that he had "no prior criminal record" was inconsistent with the PSI report.

The PSI report in each of the three cases also contained a detailed summary of the offenses with which appellant was charged. Each offense report summary described injury, or threat of imminent bodily injury, to the complainant, together with the use of a deadly weapon, by appel-

lant and two other men. Each PSI report also included descriptions of three extraneous offenses with which the three men had not been charged. The offense report summaries make it clear that Duer's understanding that appellant had never been "accused of actually having any sort of a weapon in your possession" was inconsistent with the PSI report.

During further brief questioning of appellant, Duer referred to the prior offenses to which the court had appointed him as "a misdemeanor, two misdemeanor convictions"; then, when appellant began to testify that he had been convicted of misdemeanor theft for stealing "baby milk" for his son, Duer interjected, "Wait a minute. What I have is a theft and an escape." The court interrupted Duer's questions of appellant again to check the age of appellant's son at the time appellant was convicted of the theft of baby formula, determined that the son was five years old, stated, "You weren't stealing for your son like you told him," and directed Duer to continue. After a few more questions regarding appellant's support for his children, Duer passed the witness.

During cross-examination by the prosecutor, appellant testified in detail about each charged offense. Each of the three assaults was committed by "a party of three," himself, his twin brother, and his uncle. He "took the lady's purse" in Cause Number 867829 and was "on the other two," but did nothing because he was too high on "crack" cocaine, which he had been using for two years. Because he did not have money to buy crack, "I went with my brother when we did those last three" behind Northline Mall. When he stole the purse, he was high and on his way to buy crack with his brother and their girlfriends and he "didn't feel like going all the way back to southwest and ask my boss for money," so he got out of the car and

demanded the purse. The lady said he had a knife, but he did not. "I probably scared her because she probably wasn't expecting that. That would scare anybody. It would scare me."

Appellant denied committing the offense in Cause Number 867831, in which Mendez was beaten with a stick on the side of his head, his pants torn, his wallet taken, and a necklace snatched from around his neck; he testified that he was in jail that day, May 6. Subsequent questioning from the State and the court established, however, that appellant had been released from jail. When confronted by the State with his confession of his active role in the assault—described in the PSI report as appellant's hitting Mendez on the side of his head with a stick, then ripping his pants pocket and grabbing the wallet, then snatching his necklace from his neck while a second man grabbed Mendez's arms and held them behind his back—appellant denied knowing what he had told the police.

Appellant's recollection of the third offense was somewhat better:

> Q [Ms. Escobedo]: What about the other offense in which you stated that your uncle, your brother, Paul, was driving the same 1987 Toyota that you said your uncle was armed with the same club and that you and [your uncle] Felix confronted the complainant? You stated Felix beat the complainant severely all over his body causing serious bodily injury. Stated blood spattered everywhere. Felix continued to beat the complainant with a stick. I stole the man's wallet. And you guys fled in the vehicle. You said the complainant only had $4 in his wallet. You remember that?
>
> A [Appellant]: I remember something like that.

Appellant continued, however, to distance himself from his confession, to excuse his behavior and to deny responsibility for the charged offenses, blaming his uncle and twin brother.

Appellant also testified on cross-examination that he was unemployed; that he had children by three different girlfriends; that he previously had been jailed for domestic violence; that he seldom had seen the children because he could not be around them while on drugs or alcohol or he would be arrested; that he had paid very little for their support; that he could not stop using drugs; and that he had never tried to get help for his drug problem. In response to questions from the court, appellant admitted to a prior arrest for domestic violence for beating up the mother of his son and kidnapping the boy, after which he escaped from custody by leaving the hospital where he was being treated for appendicitis. He testified that he and his twin were both "crack heads" and that he was documented by the police department as a gang member. The robberies he was doing were for money and drugs; and the three cases all occurred on the same street behind Northline Mall.

Duer waived the right to put on additional evidence and the right to argue at the sentencing phase after the trial court determined appellant's guilt. Following the hearing, the court, having determined guilt, sentenced appellant to 20 years on each count, to run concurrently. Appellant signed the notice of appeal the same day and asked the court to set bail, which the court set at "$0," signing on the same form. That same day, having been advised by Duer of his rights, appellant signed a pauper's oath and requested appointment of counsel on appeal.

On January 7, 2002, the court appointed Jim Leitner as appellant's counsel on appeal. Leitner filed both a general and a specific notice of appeal. TEX.R.APP. P. 25.2(b)(2); (b)(3)(A),(B). Appellant's ap-

pellate counsel also filed a motion for new trial. Appellant's motion was overruled by operation of law, and this appeal followed.

## Ineffective Assistance of Counsel

■ In his first issue, appellant asserts that he was denied effective assistance of counsel. He contends that he involuntarily pleaded guilty to the three aggravated robberies because (1) his second counsel, Scheve, who was suffering from an illness that altered his thinking ability, advised him to plead guilty and (2) his third counsel, Duer, who represented him at the punishment phase, was not familiar with the charges against appellant, the facts of appellant's cases, and the facts of appellant's past criminal history, and, therefore, did not know of or present appellant's defenses.

■ To show ineffective assistance of counsel, an appellant must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms, and (2) but for counsel's errors, there is a reasonable probability the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984). This standard of proof of ineffective assistance applies to the punishment phase as well as to the trial stage of criminal proceedings. *Wiggins v. Smith*, —— U.S. ——, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim.App.1986). A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Wiggins*, 123 S.Ct. at 2542; *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim. App.1999); *Jackson v. State*, 973 S.W.2d

954, 956 (Tex.Crim.App.1998). It is an appellant's burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *Thompson*, 9 S.W.3d at 813; *Jackson*, 973 S.W.2d at 956; *McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App.1992). The appellant must satisfy both prongs of the *Strickland* test, or the claim of ineffective assistance will fail. *Wiggins*, 123 S.Ct. at 2535; *Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071; *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App.2001).

■ We must look to the "totality of the representation and the particular circumstances of each case" in evaluating the effectiveness of counsel. *Thompson*, 9 S.W.3d at 813. In so doing, we recognize the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Thompson*, 9 S.W.3d at 813. As the Supreme Court observed:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To defeat the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland*, 928 S.W.2d at 500.

■ The State claims that, since there was no motion for new trial hearing to establish the reasons for Scheve's and Duer's actions,[1] and since their trial strate-

---

1. Appellant's motion for new trial, filed by his appellate counsel, Jim Leitner, failed to raise

gy cannot be determined from the record, appellant has not rebutted the presumption that he received reasonable assistance of counsel. *See Thompson,* 9 S.W.3d at 813. The Texas Court of Criminal Appeals has held, however, that a motion for new trial claiming ineffective assistance of counsel is not always required to preserve that claim. *See Robinson v. State,* 16 S.W.3d 808, 809–10 (Tex.Crim.App.2000). A timely filed appeal is a proper procedure for seeking relief regarding ineffective assistance of counsel. *See id.* A hearing on a motion for new trial is required only when the motion raises matters extrinsic to the record. *See Castoreno v. State,* 932 S.W.2d 597, 605 (Tex.App.-San Antonio 1996, pet. ref'd). When an appellant's allegations of ineffective assistance of counsel are firmly founded and affirmatively demonstrated in the record, no evidentiary hearing is required. *See McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App. 1996); *Castoreno,* 932 S.W.2d at 605. Therefore, we address whether the record affirmatively demonstrates ineffective assistance of counsel.

*Appellant's Claim of Ineffective Assistance of Counsel by Scheve*

 Scheve was appellant's second counsel. During the time he was represented by Scheve, appellant entered guilty pleas on all three counts of aggravated assault with a deadly weapon without an agreed recommendation as to punishment, but with an agreement that a PSI report would be prepared and that, at the sentencing hearing, appellant would be accorded unlimited argument. Appellant acknowledged his understanding of the bargain, his receipt of the court's admonishments, and the effectiveness of his

counsel. Rather than reflecting Scheve's inability to think at that time, as appellant alleges, the record reflects that Scheve's dizziness began on November 1, 2001— the month in which the PSI hearing was set. Scheve promptly sought to withdraw from representing appellant, and the court granted that request and immediately appointed substitute counsel.

The first prong of the *Strickland* test for ineffective assistance of counsel requires an appellant to demonstrate that his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65. The record "must affirmatively demonstrate the alleged ineffectiveness." *McFarland,* 928 S.W.2d at 500. Here, it does not. We overrule appellant's first point of error with respect to Scheve.

*Appellant's Claim of Ineffective Assistance of Counsel by Duer*

 Duer represented appellant at the sentencing stage of the proceedings. The two-pronged test for ineffective assistance of counsel set out in *Strickland* applies to sentencing proceedings. *Wiggins,* 123 S.Ct. at 2535; *Hernandez v. State,* 988 S.W.2d 770, 772 (Tex.Crim.App.1999). The first prong of the *Strickland* test requires an appellant to demonstrate that his counsel's effectiveness at the punishment phase fell below an objective standard of reasonableness under prevailing professional norms. *Wiggins,* 123 S.Ct. at 2535; *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2065. The duty to investigate is not, however, categorical; rather, " 'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *Id.* (quoting *Strickland,* 466 U.S. at 691,

---

ineffective assistance of counsel. Instead it was based on the grounds that the court committed some material error that injured appel-

lant's rights and that "[t]he verdict [*sic*] was contrary to the law and evidence."

104 S.Ct. at 2066). Counsel's strategic choices made after a less than complete investigation of the law and facts relevant to plausible options are considered reasonable, on a claim of ineffective assistance, precisely to the extent that reasonable professional judgments support limitations on the investigation. *Wiggins,* 123 S.Ct. at 2535 (quoting *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066).

■ When, as here, the judge assesses the punishment in a felony case, he must order a written PSI report to be prepared by a supervision officer. TEX.CODE CRIM. PROC. ANN. arts. 37.07 § 3(d), 42.12 § 9(a) (Vernon Supp.2003). The report must include the circumstances of the offense with which the defendant is charged, the amount of restitution necessary to adequately compensate a victim of the offense, the defendant's criminal and social history, and any other information relating to the defendant or the offense that the judge requests. *Id.* art. 42.12 § 9(a). Before sentencing the defendant, the judge must permit the defendant or his counsel to read the PSI report, to comment on it, and, with the court's approval, to introduce testimony or other information alleging a factual inaccuracy in the report. *Id.* art. 42.12 § 9(d), (e). It is the duty of the trial court to consider the evidence submitted upon a defendant's pleading guilty; as the trier of fact, the court may find the defendant guilty of a lesser offense or it may find him not guilty. *Solis v. State,* 945 S.W.2d 300, 303 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd).

In all criminal cases, after a finding of guilt, regardless of the plea or whether punishment is assessed by the judge or the jury, both the State and the defendant may offer evidence as to any matter the court deems relevant to sentencing. The

trial court is also required to afford a defendant the opportunity to present evidence regarding punishment. TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1). Such evidence may include the defendant's prior criminal record, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and any other evidence of an extraneous crime or bad act the defendant has been shown beyond a reasonable doubt by evidence to have committed. *Id.*

Here, appellant's guilty plea in each cause affirmatively recognized his right to a PSI hearing with unlimited argument; the PSI report was prepared and made available to defense counsel; and a hearing to assess punishment was held on December 21, 2001, nine days after Duer was appointed appellant's counsel. Although the court was required to grant Duer 10 days to prepare for the punishment hearing,[2] Duer failed to request 10 days notice and did not seek a continuance.

Duer could not have alleged a factual inaccuracy or omission in the investigations or reports because, by his own admission, he was not familiar with the offenses with which appellant was charged. That he was also unfamiliar with appellant's criminal history is shown by his affirmative statement on the record, "you do have no prior criminal record, correct?" Duer could not have challenged the accuracy or completeness of the PSI reports' versions of the offense or appellant's criminal histories because, by his own admission, he was unfamiliar with both, and, thus, was ineffective in performing functions under section 9(e) of article 42.12.

Because Duer was unfamiliar with appellant's offenses, he could not advance any possible defense to the charges of

---

2. TEX.CODE CRIM PROC. ANN. art. 1.051(e) (Vernon Supp.2003).

aggravated robbery against him, or seek a possible reduction of those charges.[3] A trial court has the authority, despite a guilty plea, to find a criminal defendant not guilty or to convict him of a lesser offense. *Solis,* 945 S.W.2d at 303.

Moreover, because Duer was unfamiliar with appellant's offenses, he was unable to determine whether mitigating evidence pertaining to appellant's role in the offenses existed. Duer's questions to appellant at the hearing regarding appellant's background, the details of the charges against him, and his prior criminal record, as well as Duer's admission that he was "not familiar with the offenses," make clear his lack of knowledge as to whether there were any mitigating circumstances.

We cannot speculatively attribute the deficiencies in Duer's performance to "trial strategy," as the State would have us do. Instead, we define the deference owed allegedly strategic judgments in terms of the adequacy of the investigations supporting those judgments. *Wiggins,* 123 S.Ct. at 2535. A failure to uncover and present mitigating evidence cannot be justified as a tactical decision when defense counsel have "not 'fulfill[ed] their obligation to conduct a thorough investigation of the defendant's background.'" *Wiggins,* 123 S.Ct. at 2535(quoting *Williams v. Taylor,* 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389); *see also Ex Parte Duffy,* 607 S.W.2d 507, 526 (Tex. Crim.App.1980), *overruled on other grounds by Hernandez,* 988 S.W.2d at 771 (it may not be argued that a given course of conduct is within the realm of trial strategy unless and until the trial attorney

has conducted the necessary legal and factual investigation that would enable him to make an informed, rational decision).

We hold that an attorney who is brought into a case specifically to represent a criminal defendant at the PSI hearing has a duty to familiarize himself sufficiently with the totality of the legal and factual circumstances to be capable of making an informed and rational decision regarding whether or not to advance rights accorded the defendant by law, such as the right to seek a continuance; to seek a correction, amendment, or supplementation of the PSI report; to seek withdrawal of a plea of guilty or reduction of the charges; or to put on mitigating evidence. *See Wiggins,* 123 S.Ct. at 2535 (quoting *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066) (counsel's strategic choices made after less than complete investigation of law and facts relevant to plausible options are considered reasonable, on a claim of ineffective assistance, precisely to extent reasonable professional judgments support limitations on investigation).

Here, the record affirmatively demonstrates that Duer did not fulfill his "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins,* 123 S.Ct. at 2535 (quoting *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066). Appellant's counsel's effectiveness at the punishment phase, therefore, fell below an objective standard of reasonableness under prevailing professional norms. *See Wiggins,* 123 S.Ct. at 2535; *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. We con-

---

**3.** Under Texas law, a person commits the offense of robbery, a second degree felony, if, while committing theft, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly places another in fear of imminent bodily injury or death. TEX. PEN.CODE ANN. § 29.02 (Vernon 2003). A person commits aggravated robbery, a first degree felony, if he commits robbery and causes serious bodily injury to another, uses or exhibits a deadly weapon, or causes or threatens imminent bodily injury to a disabled or elderly person. *Id.* § 29.03.

clude that appellant has satisfied the first prong of the *Strickland* test with respect to his representation at the punishment phase.

The second prong of the *Strickland* test requires an appellant to demonstrate that, but for his counsel's errors, there is a reasonable probability the result of the proceeding would have been different. *Wiggins,* 123 S.Ct. at 2542; *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. An appellate court will not reverse a conviction for ineffective assistance of counsel at the punishment stage unless the appellant shows prejudice as a result of deficient attorney performance. *Wiggins,* 123 S.Ct. at 2542; *Hernandez,* 988 S.W.2d at 770. To assess prejudice, "we reweigh the evidence in aggravation against the totality of available mitigating evidence" as indicated by the record as a whole. *Wiggins,* 123 S.Ct. at 2542.

Here, there is no indication in the record that, had Duer fulfilled his duty to investigate or make a reasonable decision not to investigate, the result of the proceeding would have been different. There is no indication that there were factual inaccuracies in the PSI reports, or that the reports were materially incomplete, or that appellant's guilty pleas were improper, or that information was available to Duer which would have led to mitigating evidence sufficient to reduce appellant's sentences had Duer fulfilled his duty to investigate.[4] Instead, there is overwhelming evidence, in the form of the PSI reports and appellant's own testimony, elicited by the State and by the trial court at the sentencing hearing, that supports the charges of aggravated robbery, appellant's guilty pleas, and the sentences assessed against appel-

lant. Appellant has thus failed to satisfy the second prong of the *Strickland* test for ineffective assistance.

We hold that appellant has not satisfied the second prong.

We overrule appellant's first point of error.

### Failure to Grant Defendant's Counsel 10 Days to Prepare for PSI

■■■■■ In his second point of error, appellant argues that he was deprived of his right to have 10 days for his new counsel to prepare for the PSI hearing. *See* TEX.CODE CRIM PROC. ANN. art. 1.051(e) (Vernon Supp.2003). A violation of article 1.051(e) constitutes error. *See Rojas v. State,* 943 S.W.2d 507, 510 (Tex.App.-Dallas 1997, no pet.) (citing *Miller v. State,* 866 S.W.2d 243, 247 n. 10 (Tex.Crim.App. 1993)). However, this error is subject to a harm analysis. *Matchett v. State,* 941 S.W.2d 922, 928–29 (Tex.Crim.App.1996). We conclude, on the basis of the record, that the trial court violated the Code of Criminal Procedure by giving Duer nine days—instead of 10—to prepare. We cannot say, however, that one additional day would have affected appellant's defense or the outcome of the sentencing hearing. *See* TEX.R.APP. P. 44.2(b). We conclude that the error was harmless.

### Withdrawal of Guilty Plea

■■■■■ In this third issue, appellant contends that the trial court erred in not *sua sponte* withdrawing appellant's guilty plea. The trial court is not required to withdraw a plea of guilty *sua sponte* and enter a plea of not guilty for a defendant when the defendant enters a plea of guilty

---

4. In *Wiggins,* there were numerous indications in the trial and post-conviction record that social security records and "other people's reports" were available to defense coun-

sel that would have led to mitigating evidence about defendant's personal history had defense counsel fulfilled its duty to investigate. *See Wiggins,* 123 S.Ct. at 2536–37.

before the court after waiving a jury, even if evidence is adduced that reasonably and fairly raises an issue as to his guilt. *See Thomas v. State*, 599 S.W.2d 823, 824 (Tex. Crim.App.1980); *Moon v. State*, 572 S.W.2d 681, 682 (Tex.Crim.App.1978); *Brown v. State*, 11 S.W.3d 360, 362–63 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd); *Solis*, 945 S.W.2d at 303. It is the duty of the trial court to consider the evidence submitted; as the trier of the facts, the court may find the appellant guilty of a lesser offense, or it may find the defendant not guilty as the facts require. *Thomas*, 599 S.W.2d at 824; *Moon*, 572 S.W.2d at 682; *Solis*, 945 S.W.2d at 303. Here, the trial judge, as the trier of the facts, considered the evidence submitted, found appellant guilty of the charged offenses, and sentenced him to 20 years' confinement on each charge, his sentences to run concurrently. The trial court did not err.

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.

Justice HEDGES concurring.

ADELE HEDGES, Justice, concurring.

I join the majority opinion regarding Layton Duer's representation. I merely concur in the majority opinion disposition and judgment regarding Gerald Scheve's representation. I would hold that, assuming without deciding that Scheve's representation was ineffective, appellant has not met the second prong of the *Strickland* test with respect to that representation.

Appellant makes no specific assertion concerning how Mr. Scheve's alleged ineffectiveness harmed him. The closest he comes is his testimony at the PSI hearing:

"The [prosecutor] said I couldn't plead guilty to one and not guilty to the other two because from my understanding Mr. Chevy [sic] said that was going to be hard to argue the fact of that on the trial."

What appellant does **not** say is that he would not have pleaded guilty to any or all of the three charges but for Mr. Scheve's advice. Based on this record and appellant's brief, I believe that there is not a reasonable probability that the outcome would have been different had Scheve's representation been errorless. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984).