**James Asa WYNKOOP, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–06–01004–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 1, 2007.

Discretionary Review Refused
April 9, 2008.

Bob Wicoff, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Bridget Holloway, Assistant District Attorney–Harris County, Houston, TX, for The State.

Panel consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION

TIM TAFT, Justice.

Appellant, James Asa Wynkoop, pleaded guilty, without an agreed punishment recommendation from the State, to the second-degree-felony offense of sexual assault of a child. *See* Tex. Pen.Code Ann. § 22.011(a)(2)(A) (Vernon Supp.2006). After a pre-sentence investigation and hearing, the trial court found appellant guilty and assessed his punishment at 14 years in prison. We determine whether appellant was denied effective assistance of counsel by trial counsel's failure to call an expert witness at the punishment hearing. We affirm.

## Background

Appellant and the complainant, A.J., first met when she was 10 years old. The two became reacquainted when she was 14, after appellant had been hired as the trainer for her horse. The two began training together daily and, shortly thereafter, a sexual relationship began. At this time, appellant was 48 years old, and the complainant was 14. The complainant became pregnant and, on September 2, 2005, gave birth to a baby girl. The baby was born with a massive, arachnoid cyst in her brain, which rendered her severely mentally and physically handicapped. For what is expected by doctors to be a short life, the baby will require constant medical attention.

On December 8, 2005, appellant pleaded guilty to the felony offense of sexual assault of a child. A pre-sentence-investigation ("PSI") hearing was set for August 3, 2006. Due to the late arrival of the PSI report, appellant and his trial counsel did not go over the report until late on the night before his hearing, whereupon it was discovered that there were certain factual inaccuracies that could be cleared up at the hearing the next day.

In his affidavit in support of his motion for new trial, appellant averred that he was led to believe that trial counsel intended, on cross-examining the complainant and her mother, to dispute their assertions in the PSI report that he had threatened the complainant with a gun and had warned her not to tell anybody that he was the father of her unborn child. Appellant testified at the motion-for-new-trial hearing that he was led by trial counsel to believe that these allegations were to be a main focus of trial counsel's cross-examination of the complainant and her mother. However, trial counsel declined to cross-examine both witnesses. At the motion-for-new-trial hearing, trial counsel testified that his reason for making this decision was strategic and that he "didn't want to go back and forth with the mother of a

victim" about certain things. Instead, trial counsel presented at the PSI hearing a psychiatrist and a probation officer who testified to appellant's suitability for community supervision.

Appellant also testified at the motion-for-new-trial hearing that he believed that he and other character witnesses were to be called at the PSI hearing to offer testimony of appellant's good standing in the community. However, appellant stated that trial counsel told him that things were going well and that appellant would not need to testify. Appellant and his trial counsel also disputed whether trial counsel told appellant that the sexual assault charge was a "3g" offense and that, if convicted, appellant would have to serve at least half of the sentence imposed by the court.

### Ineffective Assistance of Counsel

Appellant's sole point of error on appeal is that he was denied effective assistance of counsel at the punishment phase of trial because of trial counsel's failure to call an expert witness to testify that the complications suffered by the complainant's baby were genetic, unpreventable, and had nothing to do with "the acts or omissions of the appellant during the complainant's pregnancy." Appellant's argument emphasizes that the lack of mitigating testimony to counter testimony from the complainant and her mother as to the extremely adverse conditions inherent in caring for a newborn with severe birth defects was an unreasonable exercise of trial strategy and was prejudicial to appellant.

### A. Standard of Review

 The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984). *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999); *Hernandez v. State,*

988 S.W.2d 770, 772 (Tex.Crim.App.1999) (applying *Strickland* standard at punishment phase of non-capital trial). Appellant must show both that (1) counsel's performance was so deficient that he was not functioning as acceptable counsel under the Sixth Amendment and (2) there is a reasonable probability that, but for counsel's error or omission, the result of the proceedings would have been different, *i.e.,* the error or omission was sufficient to undermine confidence in the proceeding's outcome. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The constitutional right to counsel does not mean the right to error-less counsel. *Saylor v. State,* 660 S.W.2d 822, 824 (Tex.Crim.App.1983). In determining whether counsel was ineffective, we consider the totality of the circumstances of the particular case. *Thompson,* 9 S.W.3d at 813.

 It is the defendant's burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Id.* A defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Gamble v. State,* 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.). Assertions of ineffective assistance of counsel must be firmly founded in the record. *Bone v. State,* 77 S.W.3d 828, 835 (Tex.Crim.App.2002); *Gamble,* 916 S.W.2d at 93.

### B. Discussion

 Appellant emphasizes the trial court's comments, just prior to sentencing appellant to 14 years in prison, when the trial court seized upon an unobjected-to argument the prosecutor had made by stating:

> There was no prenatal care, no prenatal education ... She didn't have prenatal care. She wasn't educated. She didn't have a doctor supervising her pregnancy

as a teenager, which is ... it's common knowledge it is always dangerous. So, the result is a baby that's born with a quarter of a brain at best.

However, during the motion-for-new-trial hearing, trial counsel openly discussed his opinion that calling an expert to refute the possible link between the complainant's lack of prenatal care (caused by appellant's threats to the complainant) and the birth defects suffered by the baby would have been in direct opposition to the strategy that he wanted to pursue. Although trial counsel did not expressly state at the motion-for-new-trial hearing what that strategy was, the strategy can be inferred from the witnesses that trial counsel had called at the PSI hearing. At the PSI hearing, trial counsel called two experts: one was a doctor, who was certified in psychiatry, neurology, and forensic medicine; the other was a former parole and probation officer. Both experts testified that they believed that appellant was a suitable candidate for community supervision.

It is thus reasonable to infer that trial counsel's strategy at punishment was focused on establishing appellant's suitability for community supervision and his low risk of recidivism. In appellant's motion-for-new-trial hearing, trial counsel testified that he did not interview or call an expert to defuse the potential causation argument for the following reason:

> I just didn't feel that it was something to expend time and effort on. It's not something that I felt like, given what we were bringing to the Court, and the request that we're making, it didn't ... it just wasn't something that I felt like was a controlling issue in the case.

Trial counsel also testified that "[w]hether or not prenatal care had anything to do with [the baby's birth defect] or not, one thing that is absolutely certain is that it was [appellant's] baby. So ultimately from a fault standpoint, it is his fault. That's why I chose not to split that hair." In other words, in showing that appellant was taking responsibility for his actions so as to be a good candidate for supervision, trial counsel did not want to split hairs between being responsible for causing the birth, but not being responsible for causing the birth defects, of the complainant's baby.

To be successful on his ineffective assistance claim, appellant must show that the choices made by trial counsel were not part of any reasonable trial strategy. *See Gamble*, 916 S.W.2d at 93. Further, "[c]ounsel's performance will not be found deficient unless the conduct was so outrageous that no competent attorney would have engaged in it." *Shanklin v. State*, 190 S.W.3d 154, 160 (Tex.App.-Houston [1st Dist.] 2005, pet. dism'd) (discussing *Bone*, 77 S.W.3d at 844–34). Appellant reasons that trial counsel's strategy not to investigate "[w]hether a link existed between the Complainant's lack of prenatal care and the baby's birth defect is not tantamount to a reasonable investigation upon which to base a trial strategy." We disagree. It was not an unreasonable professional judgment to focus time and energy on establishing, through expert witnesses, that appellant was a first-time offender who would be an excellent candidate for community supervision.

We cannot say that the strategy employed by trial counsel was unreasonable. In *Blott v. State*, the Court of Criminal Appeals held that "[t]his court will not second guess through hindsight the strategy of counsel at trial nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness." 588 S.W.2d 588, 592 (Tex. Crim.App.1979).

We also find appellant's reliance on our decision in *Rivera v. State*, 123 S.W.3d 21

(Tex.App.-Houston [1st Dist.] 2003, pet. ref'd), to be misplaced. In *Rivera*, the appellant was charged with aggravated robbery and was appointed new counsel during the punishment phase of his trial. *Id.* at 24–25. Counsel had only nine days to prepare for the sentencing hearing and failed to request 10 days' notice or a continuance so that he could verify that the PSI report was accurate. *Id.* at 25. This Court held that counsel's failure to investigate his client's background adequately violated the first prong of the *Strickland* test. *Rivera*, 123 S.W.3d at 31–32. However, our holding in *Rivera* was narrow and was applied to counsel who had been brought in to defend a client only at the punishment phase of trial. *See id.* at 29–32.

Nevertheless, appellant argues that *Rivera* applies to the facts of this case and suggests that "[i]t cannot be argued that a given course of conduct is within the realm of trial strategy unless and until the trial attorney has conducted the necessary legal and factual investigation that would enable him to make an informed, rational decision." Even assuming that a full investigation of the causation issue would have shown no link between the lack of prenatal care and the baby's birth defects, appellant has not shown why trial counsel's election to focus on appellant's suitability for community supervision, instead of on that causation issue, constituted deficient representation. Indeed, trial counsel reasonably could have determined that introducing evidence of the lack of this type of causation could have undermined his strategy in two ways: (1) by emphasizing the birth defects that would not have existed apart from appellant's having sexually assaulted the complainant and (2) by giving the impression that appellant sought to evade part of the blame for his actions.

Ultimately, appellant's challenge fails because trial counsel had a reasonable trial strategy that he carried out in a reasonable manner. Therefore, we hold that appellant did not meet his burden of proof on the first prong of *Strickland*, making it unnecessary to address the second prong.

We overrule appellant's point of error.

### Conclusion

We affirm the judgment of the trial court.