IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-10-00344-CR

 

Ex
parte William Rene Diaz,

 

 

 



From the 272nd District
Court

Brazos County, Texas

Trial Court No. 04-02588-CRF-272-A

 



MEMORANDUM  Opinion



 

            On August 30, 2004, William
Rene Diaz pleaded guilty to the felony offense of driving while intoxicated
with a child passenger.  Tex. Penal Code
Ann. 49.045 (Vernon Supp. 2010).  The trial court convicted appellant
and assessed his punishment at two years in a state jail facility and a $500
fine.  The trial court suspended imposition of the sentence and placed Diaz on
community supervision for four years.  The trial court entered an order
September 8, 2008, discharging Diaz from community supervision.  On June 21,
2010, Diaz filed an Application for Writ of Habeas Corpus under Tex. Code Crim. Pro. Ann. art. 11.072
(Vernon 2005).  The trial court denied Diaz’s Application for Writ of Habeas
Corpus.  We affirm.

We review the trial court's denial of
habeas relief under an abuse of discretion standard and will consider the facts
in the light most favorable to the court's ruling.  Ex parte Wheeler,
203 S.W.3d 317, 324 (Tex.Crim.App.2006); Doyle v. State, 317 S.W.3d 471,
475 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d).  We afford almost
complete deference to the trial court's determination of historical facts
supported by the record, especially when those factual findings rely upon an
evaluation of credibility and demeanor.  Doyle v. State, 317 S.W.3d at
475.  We apply the same deference to review the trial court's application of
law to fact questions, if the resolution of those determinations rests upon an
evaluation of credibility and demeanor. Id.  However, if the outcome of
those ultimate questions turns upon an application of legal standards, we
review the trial court's determination de novo.  Id.

            In his sole issue on appeal,
Diaz argues that the trial court abused its discretion by not evaluating his
Writ of Habeas Corpus in light of Padilla v. Kentucky, 130 S.Ct. 1473
(2010).  In Padilla, the Court stated that a defendant is entitled to
effective assistance of counsel before deciding whether to plead guilty.  Padilla
v. Kentucky, 130 S.Ct. at 1480-1; Strickland v. Washington, 466 U.S.
688, 104 S.Ct. 2052 80 L.Ed.2d 674 (1984).  The Court held that counsel must
inform his client whether his plea carries a risk of deportation.  Padilla
v. Kentucky, 130 S.Ct. at 1486.

            Diaz argues that he received
ineffective assistance of counsel because his trial counsel failed to inform
him that he would no longer be eligible for Temporary Protected Status as a
result of his felony conviction.  Diaz states that he would not have entered a
plea if he knew he would lose TPS status and face deportation. 

In an affidavit, trial counsel stated
that Diaz was incarcerated on the DWI charge and also an I.N.S hold on an
immigration matter.  Trial counsel got the immigration hold lifted, and Diaz
was released on bond on the DWI charge.  Trial counsel stated that Diaz’s
primary concern was that he not go back to jail, even as a condition of probation. 
Diaz agreed to accept four years of community supervision with no jail time. 
Trial counsel further stated, “I explained to him that there was a significant
chance that he could be deported as a result of his felony conviction.”

The record shows that at the hearing on
Diaz’s guilty plea, the trial court admonished Diaz that he could be deported
as a result of his guilty plea.  Diaz was provided a certified translator at
the plea hearing.  The plea forms were also translated into Spanish and reviewed
with Diaz.

The trial court applied the standards
for ineffective assistance of counsel set out in Strickland v. Washington
and concluded that Diaz had not met his burden to show that he received
ineffective assistance.  The record shows that trial counsel informed Diaz he
could be deported as a result of his plea as required by Padilla. 
Although the trial court does not cite Padilla, Diaz has not shown that
the trial court abused its discretion in failing to evaluate his Application
for Writ of Habeas Corpus in light of Padilla.  We overrule Diaz’s sole
issue on appeal.

We affirm the trial court’s order
denying habeas relief.

 

 

                                                                        AL
SCOGGINS

                                                                        Justice

 




Before Chief
Justice Gray,

            Justice
Davis, and

            Justice
Scoggins

Affirmed

Opinion
delivered and filed February 9, 2011

Do not publish 

[CR25]








 






7th District Court

Limestone County, Texas

Trial Court # 9968-A

 



Opinion



 

          A
jury convicted Kenneth Wayne Freeman of aggravated sexual assault and assessed
his punishment at seventy years’ imprisonment. 
Freeman contends in three issues that: (1) the trial court abused its
discretion by denying his motion for new trial premised on an
ineffective-assistance-of-counsel claim; (2) his trial counsel provided
ineffective assistance by failing to conduct an adequate investigation of his
mental health history; and (3) trial counsel provided ineffective assistance by
failing to pursue an insanity defense or offer evidence of Freeman’s mental
health history as mitigating evidence during the punishment phase.  We will affirm the judgment of conviction,
reverse that portion of the judgment assessing punishment, and remand this
cause to the trial court for a new punishment hearing.

Background

          According
to the testimony, Freeman confronted the complainant during the early morning
hours and attempted to physically force her into her mobile home.  She struggled with Freeman, who dragged her behind
the house and hit her over the head with what she described as a chrome handgun.  After further struggle, the complainant quit
resisting, and Freeman raped her.  DNA
evidence strongly corroborated the complainant’s identity of Freeman as her
assailant.

          That
afternoon, officers were summoned to a potential suicide in progress.  They found Freeman, who told them that “he
felt he was going to hurt himself.  He
was having thoughts of hurting himself.”

          Freeman
took the stand in his own defense.  He
testified that he did not remember anything about the events of the occasion in
question.  He described his mental health
history to some extent, telling the jury of two hospitalizations in psychiatric
facilities and treatment by MHMR.  He
described his diagnosis as “bipolar, paranoid, schizophrenic with homicidal [sic]
tendencies.”  He denied ownership of a
handgun.  On cross-examination, he
testified that he could not recall the three prior felony convictions with
which the State sought to impeach him.

          The
jury rejected defense counsel’s argument that the jury should acquit Freeman of
aggravated sexual assault because the State had failed to prove beyond a
reasonable doubt that he had a handgun.

          At
punishment, the State proved up Freeman’s three prior felony convictions.  Freeman’s mother briefly testified about his
schizophrenia diagnosis and his need for medical treatment and asked that he
receive help for his condition.

Standards
of Review

          We
review a trial court’s ruling on a motion for new trial under an
abuse-of-discretion standard.  Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).  When as here the motion for new trial alleges
ineffective assistance of counsel, we must determine whether the trial court’s
determination of the ineffective assistance claim and denial of the motion for
new trial were clearly wrong and outside the zone of reasonable disagreement.  See Bates
v. State, 88 S.W.3d 724, 727-28 (Tex. App.—Tyler 2002, pet. ref’d); accord Keller v. State, 125 S.W.3d 600,
606-07 (Tex. App.—Houston [1st Dist.] 2003), pet. dism’d, improvidently granted, 146 S.W.3d 677 (Tex. Crim. App.
2004); Edwards v. State, 37 S.W.3d 511,
515 (Tex. App.—Texarkana 2001, pet. ref’d).

          To
prevail on an ineffective assistance of counsel claim, the familiar Strickland v. Washington test must be
met.  Wiggins
v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003) (citing Strickland, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)); Andrews v. State, No. PD-993-03, 2005 Tex. Crim. App. LEXIS 500, at *5-6 (Tex. Crim. App. Mar. 23, 2005) (same). 
Under Strickland, we must
determine: (1) whether counsel’s performance was deficient, and if so, (2)
whether the defense was prejudiced by counsel’s deficient performance.  Wiggins,
539 U.S. at 521, 123 S. Ct. at 2535; Strickland,
466 U.S. at 687, 104 S. Ct. at 2064; Andrews,
2005 Tex. Crim. App. LEXIS 500, at *5.

Adequacy
of Investigation

          “To establish deficient performance, a petitioner
must demonstrate that counsel’s representation ‘fell below an objective
standard of reasonableness.’”  Wiggins, 539 U.S. at 521, 123 S. Ct. at 2535 (quoting Strickland, 466 U.S. at 688, 104 S. Ct. at 2064); accord
Andrews, 2005 Tex. Crim. App. LEXIS 500, at *5.  Counsel’s representation may meet this
standard if counsel fails to conduct an adequate pretrial investigation.  See
Wiggins, 539 U.S. at 533-34, 123 S. Ct. at 2541-42; Bouchillon
v. Collins, 907 F.2d 589, 597 (5th Cir. 1990); Ex parte Welborn, 785 S.W.2d 391, 396 (Tex. Crim. App. 1990); Hervey v. State, 131 S.W.3d 561, 564
(Tex. App.—Waco 2004, no pet.); Rivera v.
State, 123 S.W.3d 21, 31-32 (Tex. App.—Houston [1st Dist.] 2003, pet.
ref’d); Conrad v. State, 77 S.W.3d 424,
426 (Tex. App.—Fort Worth 2002, pet. ref’d); Milburn v. State, 15 S.W.3d 267, 269-70 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).

                   Strategic choices made after thorough investigation of law and
facts relevant to plausible options are virtually unchallengeable; and
strategic choices made after less than complete investigation are reasonable
precisely to the extent that reasonable professional judgments support the
limitations on investigation.  In other
words, counsel has a duty to make reasonable investigations or to make a
reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular
decision not to investigate must be directly assessed for reasonableness in all
the circumstances,  applying a heavy
measure of deference to counsel's judgments.     








 

Wiggins, 539 U.S. at 521-22, 123 S. Ct. at 2535 (quoting Strickland, 466 U.S. at 690-91, 104 S. Ct. at 2066).

          In
a case such as Freeman’s in which the issue is whether trial counsel conducted
an adequate investigation for potential mitigating evidence, “we focus on whether the investigation supporting counsel’s decision
not to introduce mitigating evidence of [Freeman’s] background was itself
reasonable.”  Id. at 523, 123 S. Ct. at 2536.

          Strickland does not require counsel to investigate every conceivable line of
mitigating evidence no matter how unlikely the effort would be to assist the
defendant at sentencing. Nor does Strickland require defense counsel to
present mitigating evidence at sentencing in every case.  Both conclusions would interfere with the
“constitutionally protected independence of counsel” at the heart of Strickland.  We base our conclusion on the much more
limited principle that “strategic choices made after less than complete
investigation are reasonable” only to the extent that “reasonable professional
judgments support the limitations on investigation.”  A decision not to investigate thus “must be
directly assessed for reasonableness in all the circumstances.”

 

Id. at 533, 123 S. Ct. at 2541 (citations
omitted).

          Thus, various courts have found trial
counsel’s performance deficient where counsel failed to conduct an adequate investigation of the defendant’s
background for potential mitigating evidence. 
See e.g. id. at 516, 533-34,
123 S. Ct. at 2532-33, 2541-42 (counsel’s limited investigation failed to
disclose “evidence of the severe physical and sexual abuse petitioner
suffered at the hands of his mother and while in the care of a series of foster
parents”); Bouchillon, 907 F.2d at
595-97 (counsel failed to investigate defendant’s medical history even though
counsel was informed that defendant had been institutionalized on several
occasions in the past); Rivera, 123
S.W.3d at 30-31 (counsel appointed for punishment phase failed to conduct adequate
investigation of facts of defendant’s cases [particularly of the defendant’s
role in the offenses] and of defendant’s criminal history); Conrad, 77 S.W.3d at 426 (counsel failed
to investigate defendant’s mental status at time of offense after State’s
experts determined that defendant was competent and sane); Milburn, 15 S.W.3d at 269-70 (counsel failed to investigate and
interview potential punishment witnesses who would have asked jury to consider
minimum punishment).

          Here,
Freeman testified at trial about two psychiatric hospitalizations, one in Dallas and one in Terrell.[1]  The officer who arrested Freeman testified
that he did so at a hospital in Dallas where Freeman had been taken “because he
reported he was having demons [and] needed help.”

Freeman’s appellate counsel introduced a number
of Freeman’s medical records in evidence during three[2]
posttrial hearings.  These records
reflect that Freeman was hospitalized in Dallas in 1986 after an attempted suicide.  After that, the records show that he had been
receiving outpatient treatment for mental illness on a regular basis for more
than a year before the date of the offense. 
Freeman had last been to MHMR about three weeks before the date of the
offense.

Appellate counsel filed a post-trial motion for
the appointment of a psychiatrist to examine Freeman and determine whether he
was sane at the time of the offense.  The
court denied this initial motion. 
Counsel filed a motion to reconsider and offered the testimony of
Freeman’s MHMR psychiatrist, Dr. Shamji Badhiwala, who reviewed Freeman’s
medical records and testified about Freeman’s condition and the potential for
an insanity diagnosis.  Dr. Badhiwala
testified that, based on Freeman’s medical history, it is possible that he
could be diagnosed as legally insane at the time of the offense.  However, Dr. Badhiwala stressed that further
examination would be required to make a diagnosis regarding Freeman’s sanity.  On cross-examination, Dr. Badhiwala agreed
that Freeman’s symptoms could have been exacerbated by his continuing use of drugs
and alcohol. 

Following this hearing, the court appointed Dr. Stephen
Mark to examine Freeman regarding his sanity. 
Dr. Mark examined Freeman and concluded that he was sane at the time of
the offense.  In the hearing on Freeman’s
motion for new trial, Dr. Mark agreed that Freeman suffers from mental illness,
but persisted in his conclusion that Freeman was sane at the time of the
offense and competent at the time of trial. 
Dr. Mark postulated that one cause for Freeman’s condition could be drug
and alcohol abuse.  He agreed that
Freeman’s medical history would be relevant punishment evidence.

Freeman’s trial counsel testified in the motion
for new trial hearing that he filed a pretrial motion to have Freeman examined
by a psychiatrist for competency because he had difficulty communicating with
Freeman about the case.  The
psychiatrist, Dr. Mark, examined Freeman and concluded that he was competent to
stand trial.

Freeman’s trial counsel testified that Freeman’s
parents told counsel that Freeman had been under a physician’s care and “had
had problems for a number of years.”  In
addition, counsel testified that he questioned Dr. Mark’s conclusion about
Freeman’s competency up to and during trial, though he did not pursue the issue
further.

Freeman’s trial counsel was not familiar with
the records of Freeman’s 1986 hospitalization or of the records of his
inpatient and outpatient treatments from 2001 to 2002.  Counsel testified that aside from the competency
examination he did not investigate Freeman’s mental health background.  Counsel testified that Freeman told him he
was “self-medicating his psychosis with crack cocaine.”  Counsel explained that he believed, and the
jury probably could infer, that Freeman was “in a mind-altered state” at the
time of the offense due to the consumption of drugs or alcohol.  However, counsel did not pursue this as
mitigating punishment evidence because he did not believe “that would help with
[the] jury.”

Freeman’s trial counsel conceded that he did not
investigate Freeman’s mental health history, even though counsel knew Freeman
had a history of mental health issues. 
The State characterizes counsel’s actions as trial strategy.  However, counsel’s testimony reflects two
components of his trial strategy: (1) trying to persuade the jury that the
State had failed to prove beyond a reasonable doubt that Freeman had a gun when
he committed the assault; and (2) not presenting evidence of diminished
capacity due to drug or alcohol use. 
From the testimony of Freeman’s counsel, it does not appear that mental
health issues played a significant role in counsel’s trial strategy.

Counsel’s failure to more fully investigate
Freeman’s mental health history can be excused as reasonable trial strategy
only if we conclude that “reasonable professional judgment[ ] support[s] the
[decision not to further investigate that history].”  Wiggins,
539 U.S. at 533, 123 S. Ct. at 2541 (quoting Strickland, 466 U.S. at 691, 104 S. Ct. at 2066). 
We cannot.  See Conrad, 77 S.W.3d at 426 n.13 (“It must be a very rare
circumstance indeed where a decision not to investigate would be ‘reasonable’
after counsel has notice of the client’s history of mental problems.”) (quoting
Bouchillon, 907 F.2d at 597).  Thus, we conclude that Freeman’s trial
counsel failed to conduct an adequate pretrial investigation of Freeman’s
mental health history.  See Wiggins, 539 U.S. at 533-34, 123
S.W.3d at 2541-42; Bouchillon, 907
F.2d at 595-97; Rivera, 123 S.W.3d at
31-32; Conrad, 77 S.W.3d at 426; Milburn, 15 S.W.3d at 269-70; cf. Brown v. State, 129 S.W.3d 762, 767
(Tex. App.—Houston [1st Dist.] 2004, no pet.) (“We will not assume that counsel
did not investigate [the defendant’s sanity or competency] when the record is
merely silent as to the depth of counsel’s investigation.”); Valderas v. State, 134 S.W.3d 330, 336-37
(Tex. App.—Amarillo 2003, no pet.) (similar complaint overruled where appellant
failed to show that “trial counsel was either unaware of the existence of [mental
health] records, failed to obtain such records, or that the records contained
any information relevant to the issue of appellant’s competency to stand trial.”).

Prejudice to Defense

To obtain reversal however, Freeman must also
establish that counsel’s deficient investigation prejudiced his defense.  Wiggins,
539 U.S. at 521, 123 S. Ct. at 2535; Strickland,
466 U.S. at 687, 104 S. Ct. at 2064; Andrews,
2005 Tex. Crim. App. LEXIS 500, at *5.

                   To satisfy the second prong of
the Strickland test, we do not
require that the appellant show that there would have been a different result
if counsel’s performance had not been deficient.  The defendant must show only that “there is a
reasonable probability that, but for counsel’s unprofessional errors, the
result of the proceeding would have been different. A reasonable probability is
a probability sufficient to undermine confidence in the outcome.”  

 

Andrews, 2005 Tex. Crim. App. LEXIS 500, at *8 (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068); accord
Wiggins, 539 U.S. at 534, 123 S. Ct. at 2542. 
“In assessing prejudice, we reweigh the evidence in aggravation against
the totality of available mitigating evidence.” 
Wiggins, 539 U.S. at 534, 123 S. Ct. at 2542; accord
Rivera, 123 S.W.3d at 32; Milburn,
15 S.W.3d at 270-71.

          Freeman
contends that there are two grounds for concluding that trial counsel’s
deficient investigation prejudiced the defense. 
First, appellate counsel contends that trial counsel’s deficient
investigation prevented him from pursuing an insanity defense.  However, Dr. Mark examined Freeman and
concluded that he was not insane at the time of the offense.  Thus, we cannot say that the failure to more
fully investigate Freeman’s mental health history prejudiced his defense during
the guilt-innocence phase.  Cf. Conrad, 77 S.W.3d at 426-27
(counsel’s failure to investigate defendant’s mental health history did not
prejudice defendant because defendant offered no evidence at hearing on motion
for new trial that he was legally insane).  Accordingly, we hold that the trial court’s
denial of Freeman’s motion for new trial on this basis was not clearly wrong
and outside the zone of reasonable disagreement.  See
Keller, 125 S.W.3d at 606-07; Bates,
88 S.W.3d at 727-28; Edwards, 37
S.W.3d at 515.

          Freeman
also contends that counsel’s deficient investigation precluded him from
developing mitigating evidence for the punishment phase.  The State’s punishment case consisted solely
of a sheriff’s deputy who compared Freeman’s fingerprints to those on a
penitentiary packet reflecting two prior felony convictions (for robbery in
1986 and possession of a controlled substance in 1988) and to those on a
judgment reflecting a 1992 conviction for felon in possession of a
firearm.  In response, Freeman’s mother
testified, describing her son’s condition and asking that he receive help for it.

          Freeman’s
counsel asked the jury to assess punishment at thirty years or less because of
his drug abuse problem.  The State argued
that, based on Freeman’s prior convictions and the violent nature of the crime,
the punishment should be much higher.

          Although
Freeman’s mother did ask the jury to take her son’s condition in consideration
when assessing punishment, the jury received only lay testimony from Freeman
and his mother regarding his mental illness. 
Freeman’s counsel concedes that he made no investigation of Freeman’s mental
health history.

          [Freeman]
has demonstrated prejudice in this case, even though it is sheer speculation[3]
that [evidence of his mental illness and his medical history] would have in
fact favorably influenced the jury’s assessment of punishment.  Mitigating evidence clearly would have been
admissible.  The jury would have
considered it and possibly been influenced by it.

 

Milburn, 15 S.W.3d at
271 (footnote added) (citation omitted).

          Freeman’s
trial counsel admittedly failed to investigate Freeman’s mental health history,
and there is a reasonable probability that the results of the punishment phase
would have been different if counsel had conducted an adequate investigation.  See id.  However, a trial court has no authority to
grant a new trial as to punishment alone. 
State v. Hight, 907 S.W.2d 845,
846-47 (Tex. Crim. App. 1995); Junious v.
State, 120 S.W.3d 413, 416 n.3 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d).  Thus, we hold that the trial court’s denial
of Freeman’s motion for new trial on this basis was not clearly wrong and
outside the zone of reasonable disagreement. 
See Keller, 125 S.W.3d at
606-07; Bates, 88 S.W.3d at 727-28; Edwards, 37 S.W.3d at 515.  Accordingly, we overrule Freeman’s first
issue.

          Nevertheless,
because we have concluded that Freeman’s trial counsel performed an inadequate
pretrial investigation of Freeman’s mental health history and that this failure
prejudiced Freeman’s punishment case, we sustain Freeman’s second and third
issues in part.

We affirm the judgment of conviction, reverse that
portion of the judgment assessing punishment, and remand this cause to the
trial court for a new punishment hearing. 
See Tex. Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp. 2004–2005).

 

FELIPE REYNA

Justice

Before Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed in part,

Reversed and remanded in part

Opinion delivered and filed April
 20, 2005

Publish

[CRPM]











    [1]           In
a report prepared later by Dr. Stephen Mark with regard to Freeman’s sanity at
the time of the offense, Dr. Mark noted that Freeman was in the Dallas hospital from May 21-24, 2001 and in the Terrell hospital from May 24 to June 5, 2001.

 





    [2]           Freeman’s
appellate counsel filed 3 post-trial motions: (1) a motion for a psychiatric
examination to determine whether Freeman was sane at the time of the offense;
(2) a motion to reconsider the denial of the motion for psychiatric
examination; and (3) a motion for new trial alleging the same grounds of
ineffective assistance of counsel now raised on appeal.





    [3]       It could be that after conducting such an
investigation Freeman’s counsel may make the strategic decision that the
available evidence concerning Freeman’s condition and history should not be
offered at punishment.  However, by
deciding before an investigation, trial counsel made an uninformed
decision.  See Wiggins v. Smith, 539 U.S. 510, 534-35, 123 S. Ct. 2527, 2542,
156 L. Ed. 2d 471 (2003); Ex parte
Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990) (“It may not be argued
that a given course of conduct was within the realm of trial strategy unless
and until the trial attorney has conducted the necessary legal and factual
investigation which would enable him to make an informed rational decision.”).