Opinion issued February 26, 2009









                    





     


In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00778-CR




TABASSUM ANWAR BHIMJI, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 1044780




MEMORANDUM OPINION

          Appellant, Tabassum Anwar Bhimji, pleaded guilty to the first-degree felony
offense of solicitation of capital murder.


 The trial court assessed punishment at
confinement for 20 years. 
          In two points of error, appellant contends that she was denied effective
assistance of counsel in the punishment phase of her trial because her counsel (1)
failed to “have [appellant] review the [pre-sentence investigation (“PSI”) report] until
the morning of the punishment hearing” and (2) failed to object to “statements by the
prosecutor regarding extraneous offenses which were not proved by the evidence.”
          We affirm.
Background
           Appellant pleaded guilty without an agreed recommendation on punishment.
Appellant signed a waiver of constitutional rights, agreement to stipulate, and judicial
confession. She was admonished in accordance with Texas Code of Criminal
Procedure article 26.13. Tex. Code Crim. Proc. Ann. art. 26.13(d) (Vernon Supp.
2008). The trial court found her guilty and ordered that a PSI be conducted. 
          According to the PSI, Officer F. Winkler of the Houston Police Department 
received a call from an anonymous informant, called “Mike.” Mike reported that his
girlfriend worked at appellant’s convenience store in Tomball, Texas, and that
appellant had told Mike she would give him a tank of gas if he would come and meet
with her. Mike met with appellant, and she told him that a man named Feroz Momin
had stolen $500,000 worth of gasoline from her store. Appellant told Mike that she
would pay him $5,000 to kill Momin. Mike told appellant that he did not kill people
but that he knew people who did. Mike set up a meeting between appellant and
Officer Winkler.
          According to the PSI, on October 20, 2005, Officer Winkler met with appellant
at her store and talked with her in his car. He tape-recorded their conversation. 
Appellant told Officer Winkler that Momin had sued her and that she had lost her
home and other businesses, and that Momin had stolen gasoline from the storage
tanks at her store. Appellant asserted that Momin had ruined her life and that she
would pay $5,000 to have him killed. Appellant also told Officer Winkler that she
wanted him to kidnap Momin, force his family to pay $500,000, and then kill him. 
Officer Winkler asked appellant if she wanted him to beat up Momin and break his
legs, and appellant responded that she wanted Officer Winkler to “finish him off.” 
Officer Winkler told appellant that the cost to kidnap and kill Momin would be
$10,000. Appellant told Officer Winkler to take it out of the ransom money. 
Appellant told Officer Winkler that she had two other people she wanted killed after
Momin. Officer Winkler told appellant that his partner, “Chris,” would perform the
killing.
          Chris, who was actually an investigator with the Harris County District
Attorney’s Office, met with appellant. Appellant outlined how she wanted Momin
kidnapped and, after money was extorted, killed. Appellant said that she wanted to
be nearby so that she could “be in his face” before Momin was killed. Appellant
called her son and made arrangements for him to drive her to Momin’s office. 
          On October 21, 2005, according to the PSI report, Officer Winkler met with
appellant and her son, and they drove to Momin’s office so Officer Winkler could see
where it was located. Appellant then got into Officer Winkler’s car and told him that
she wanted to show him something. At appellant’s direction, Officer Winkler drove
to appellant’s former residence in Sugarland. Appellant told Officer Winkler that she
had lost her home to foreclosure, but that she had put in a bid of $354,000 to recover
the house. Appellant said that she had mistakenly told her neighbor, Moez Dhuka,
about the situation and that Dhuka had someone come in and outbid appellant on the
house. Appellant pointed out Dhuka’s house and told Officer Winkler that she
wanted him to kidnap Dhuka, extort $100,000 from him, and then kill him. Appellant
stated that she also wanted the bid dropped on the house. Appellant instructed
Officer Winkler not to harm Dhuka’s father, who also resided in the home. Appellant
and Officer Winkler agreed that Officer Winkler’s payment would come out of the
money extorted from Momin. 
          Appellant was subsequently arrested and pleaded guilty to having solicited
Officer Winkler to murder Momin for a fee.
          Appellant asserted in the PSI that she “did not want to kill anyone.” Appellant
stated that she had fired “Mike” and that he had threatened her; that he pressured her
into going along with the discussions with the purported hit man; that Mike set her
up because he needed money; and that Mike made up the story about wanting to kill
Dhuka, the neighbor.
          At the punishment hearing, as more fully laid out below, the trial court asked
appellant if she had had time to review the PSI report and appellant responded in the
affirmative. Appellant and her counsel stated that they had no objections. 
          Appellant’s counsel put on witnesses at the hearing to testify on behalf of
appellant. Appellant testified that she arranged for Momin’s murder because “I lost
my gas every time and I was in pressure and I was disturbed.” Defense counsel asked
appellant if she had lost her temper or was “in a state of emotional madness,” and
appellant responded, “Yes.” Appellant denied that she wanted Momin kidnapped and
held for ransom. The trial court sentenced appellant to 20 years’ confinement. 
          Appellant filed a motion for new trial in which she raised numerous allegations
of ineffective assistance against her trial counsel, William J. Portis, Jr. After a
hearing, the trial court denied appellant’s motion for new trial. This appeal followed.
Ineffective Assistance of CounselIn two points of error, appellant contends that she was denied effective
assistance of counsel in the punishment phase of her trial because her counsel (1)
failed to “have [appellant] review the PSI until the morning of the punishment
hearing” and (2) failed to object to “statements by the prosecutor regarding
extraneous offenses which were not proved by the evidence.”
Standard of Review 
          Appellant is entitled to reasonably effective assistance of counsel. See U.S.
Const. amend. VI; Tex. Const. art. I, § 10. The right to counsel, however, does not
mean the right to errorless counsel. Robertson v. State, 187 S.W.3d 475, 483 (Tex.
Crim. App. 2006). To prove ineffective assistance of counsel, appellant must show
that (1) counsel’s performance fell below an objective standard of reasonableness and
(2) that, but for the deficient performance of counsel, there is a reasonable probability
that the result of the proceeding would have been different. Strickland v. Washington,
466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 (1984); Andrews v. State, 159
S.W.3d 98, 101 (Tex. Crim. App. 2005). A “reasonable probability” is a probability
sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104
S. Ct. 2068. 
 
           To prevail, appellant must prove ineffective assistance by a preponderance of
the evidence and must overcome the strong presumption that counsel’s conduct falls
within the wide range of reasonably professional assistance or might reasonably be
considered sound trial strategy. See Robertson, 187 S.W.3d at 482–83; Gamble v.
State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). A failure
to make a showing under either prong defeats a claim of ineffective assistance of
counsel. Rylander v. State, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). 
          As the reviewing court, we look to the totality of the representation and to the
circumstances of the case, not to isolated errors. Robertson, 187 S.W.3d at 483–84.
We must consider the adequacy of assistance as viewed at the time of trial, not
through hindsight. Id. at 482. 
          Additionally, we cannot speculate as to the reasons supporting counsel’s
behavior. Bone v. State, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). Allegations of
ineffectiveness must be firmly founded in the record. Id. at 833 & n.13. Ordinarily,
the record on direct appeal is undeveloped and cannot adequately reflect the motives
behind trial counsel’s actions. Rylander, 101 S.W.3d at 110–11. Generally, a silent
record that provides no explanation for counsel’s actions will not overcome the strong
presumption of reasonable assistance. Id. In the absence of evidence of counsel’s
reasons for the challenged conduct, an appellate court should not find deficient
performance unless the conduct was so outrageous that no competent attorney would
have engaged in it. Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).
In the rare cases in which the record on direct appeal is sufficient to prove that
counsel’s performance was deficient, an appellate court should address the claim.
Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000). 
          A single egregious error of omission or commission by counsel has been held
to constitute ineffective assistance, even in the absence of a record setting forth
counsel’s reasons for the challenged conduct. Vasquez v. State, 830 S.W.2d 948,
950–51 (Tex. Crim. App. 1992); McKinny v. State, 76 S.W.3d 463, 470–71 (Tex.
App.—Houston [1st Dist.] 2002, no pet.).
          The same standard applies to the review of claims that counsel was ineffective
during the punishment phase of trial. Hernandez v. State, 988 S.W.2d 770, 770 (Tex.
Crim. App. 1999); Wynkoop v. State, 251 S.W.3d 628, 630 (Tex. App.—Houston [1st
Dist.] 2007, pet. ref’d).
          1.       Inadequate preparation
          In her first point of error, appellant contends that her counsel was ineffective
because he failed to adequately prepare her to testify at the punishment hearing. 
Specifically, appellant contends that counsel failed to provide her with a copy of the
PSI report to review until the morning of the hearing and that she had only 20 to 30
minutes to review the report. 
          The record shows that, at the beginning of the hearing, the following discussion
took place in the trial court:
          The Court:   Have you had an opportunity to read this thing [the PSI
report]?
          [Counsel]:   I read it this morning, Your Honor. 
          The Court:   Has your client had an opportunity to read it?
          [Counsel]:   No, she has not.
          The Court:   Well, I’m going to give her an opportunity while we’re
waiting. But are there—I understand that you told me you
have witnesses this morning, is that correct?
          [Counsel]:   That’s correct, Your Honor.
          . . . .
          The Court:    . . . I’m going to ask you counsel—and I’ll give your client
a chance to read this PSI. Have you had an opportunity to
read this document?
          [Counsel]:   I did read it, Your Honor.
          The Court:   All right. Did you have any corrections, additions, or
deletions? Other than the witnesses you’re planning to
offer here today, do you object in any way to the
document?
          [Counsel]:   No, Your Honor. I don’t, I don’t find any objections.
          The Court:   State, do you have any objections?
          [State]:        No, ma’am. I do not.
          The Court:   All right. Well, give your client an opportunity to read
these, sir. Okay. And then I’ll presume. [sic]
          (Recess taken.)
          The Court:   . . . Now, the last 20 or 30 minutes, I’ve given you
[appellant] an opportunity to read this Presentence
Investigation. I’ve seen you sitting there with your
attorney. Have you had an opportunity to fully go over this
with him?
          [Appellant]: Yes, ma’am.
          The Court:   Do you have anything you wish to tell the Court that you
think is incorrect in this document?
          [Appellant]: I mean, it’s okay. It’s everything okay.
          The Court:   Okay. And do you—you read English, I take it?
          [Appellant]: Yes, ma’am.
          The Court:   Okay. And you read all the rendition of the —provided by
the State as to what the facts in this case are?
          [Appellant]: Yes, ma’am.
          The Court:   And you don’t have any objection to it?
          [Appellant]: No, ma’am. 

 
          On appeal, appellant complains that, although she stated that she had no
objections to the report, she may not have understood the word “objection,” and that
“[m]ost people who heard the word ‘objection’ would think of a legal reason offered
for exclusion of the evidence, not a dispute as to the truth of facts.” Appellant
contends that the record of her testimony at the hearing shows that she, in fact,
disagreed with the statements in the PSI.

          Specifically, appellant points out that the PSI report reflects that Officer
Winkler said that appellant “told him she had two other people to kill after [Momin].” 
Appellant complains the third person was never identified and directs us to her
testimony at the hearing that, she asserts, demonstrates that she was confused and that
counsel failed to clarify, as follows:

          [Defense Counsel]:          Did the police officers say anything to you
about how they were going to be paid?
          [Appellant]:                     I told them I don’t want—because I don’t
have no money and they said, No we will take
for those people. [sic]
          The Court:                       I’m sorry, what is the last thing you said, we
will take the what?
          [Appellant]:                     For the Momin people. Momin. That’s what he’s
telling me, I say yes.
          The Court:                       Momin, Mr. Momin?
          [Appellant]:                     Yes, ma’am.
          [Defense Counsel]:          Now, about these other two people that you
allegedly solicited to be killed, can you
explain that to the Court starting off with the
one, the homeowner thing.
          [Appellant]:                     No, I don’t know because the guy Mike, he
use his truck to move a little bit of stuff. And
he made this story and he told me, Say like
this.
          The Court:                       Who made this story?
          [Appellant]:                     Mike, the guy who bring the police.
          The Court:                       Oh, okay.
          [Defense Counsel]:          And did you ask the police to—that you
wanted—tell them, solicit them to kill this
other person?
          [Appellant]:                     They ask me, Do you want it like this? And
Mike bring them, I say yes. 
          [Defense Counsel]:          Okay. What is this other person’s name?
          [Appellant]:                     Which person’s name?
          [Defense Counsel]:          The homeowner that bid for the house?
          [Appellant]:                     I don’t know, I call him brother. . . . 
          . . . . 
          The Court:                       . . . It’s like whenever you have a problem,
your solution is, Well, Kill him too. That’s
what it sounds like.
          [Appellant]:                     No, ma’am.
          The Court:                       Who is the third person?
          [Appellant]:                     I really don’t know.
          The Court:                       Okay.
          [Appellant]:                     He’s the one who is telling me.
          The Court:                       Thank you.
          [Defense Counsel]:          Thank you, Judge. That was going to be my
next question, who the third person was.
          [Appellant]:                     I don’t know.
          [Defense Counsel]:          You don’t know?
          [Appellant]:                     No.
          [Defense Counsel]:          All right. Now, with reference to obtaining or
making a phony identification papers
[sic] . . . .

 
          Appellant also points out that, later during her testimony, the trial court
reminded her that she had said that the PSI report was correct, and she responded that
she disagreed. Appellant contends that “disputing the judge’s recollection was not
apt to help.” Appellant contends that “[a]ll of this could have been avoided if defense
counsel had taken steps to assure that the appellant had ample time to review the
PSI.” Appellant contends that “a review of the PSI should take several days,” relying
on Rivera v. State, 123 S.W.3d 21 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d),
as comparable. We disagree that Rivera is comparable in the way appellant urges. 

          In Rivera, the appellant was appointed new counsel nine days before his PSI
hearing. Id. at 25. At the hearing, counsel was asked if he had had an opportunity to
read the PSI report and whether he wished to add anything, and counsel declined. Id.
The record of the hearing, however, established that counsel was not familiar with the
charges against the appellant, the facts of his cases, or his history or prior offenses,
which were listed in the PSI. Id. at 30. On appeal, we held that an attorney who
represents a defendant at a 

PSI hearing has a duty to familiarize himself sufficiently with the
totality of the legal and factual circumstances to be capable of making
an informed and rational decision regarding whether or not to advance
rights accorded the defendant at law, such as the right to seek a
continuance, [or] to seek a correction, amendment, or supplementation
of the PSI report. . . .

 
Id. at 31. 

 
          We reasoned that, there, counsel was wholly unable to challenge the accuracy
of the PSI report because, by his own admission in the record, he was unfamiliar with
the appellant’s case. Id. Thus, we concluded, appellant’s counsel was ineffective. 
Id. However, because we also concluded that there was “overwhelming evidence” in
the PSI reports and appellant’s own testimony to support the charges, we held that
appellant had not demonstrated that he was prejudiced and therefore had not satisfied
the second prong of Strickland. Id. at 32.

          In the case at hand, nothing in the record establishes that counsel failed to 
“familiarize himself sufficiently with the totality of the legal and factual
circumstances” of appellant’s case. See id. at 31. Counsel testified at the hearing on
the motion for new trial that he had talked with appellant, had reviewed the tapes, and
had prepared appellant for her testimony at the PSI hearing “for hours” over the
course of “months.” Counsel testified that appellant came to his office more than any
other client he has had. Counsel testified that he went over the PSI report with
appellant on the morning of the hearing and that she understood it. Appellant does not
assert that there was anything specific that had surprised her or that she did not
understand when she asserted that she had no objection to the PSI report. We cannot
conclude that appellant’s erratic or equivocal testimony necessarily equates to
ineffective preparation by her counsel.


 

          Appellant contends that “[i]t was established that counsel did not have a copy
of the PSI until the morning of the punishment hearing” and “[t]herefore, he was not
prepared either.” We do not measure counsel’s effectiveness by hindsight
comparison with how other counsel might have tried the case. See Pryor v. State, 719
S.W.2d 628, 633 (Tex. App.—Dallas 1986, pet. ref’d). In addition, like Rivera,
appellant has not shown that there is a reasonable probability that, but for counsel’s
conduct, the result of the proceeding would have been different. See Strickland, 466
U.S. at 687, 104 S. Ct. at 2064; Rivera, 123 S.W.3d at 32. 

          The PSI reflects that appellant offered to pay Officer Winkler to kidnap, hold
for ransom, and kill two people; appellant provided their names and physically
showed Officer Winkler their locations; appellant made arrangements to pay Officer
Winkler out of the ransom money; appellant’s conversations with Officer Winkler
were tape-recorded; appellant admitted through her testimony that she acted to solicit
the murder of Momin; appellant asserted that she was just in a state of anger,
however, her conversations with Officer Winkler took place over a course of days,
which the trial court could have reasonably concluded gave her ample time for cool
reflection; appellant complained that Mike coerced her into making fictitious
allegations, however, appellant was alone with Officer Winkler at the time of the
conversations; appellant pleaded guilty and stipulated to the evidence. Hence, the
trial court had ample evidence on which to base the punishment it assessed. 

          The punishment range for appellant’s conviction for the first-degree felony
offense of solicitation of capital murder is confinement for five to 99 years, or life. 
See Tex. Penal Code Ann. § 12.32 (Vernon 2003). Here, the trial court assessed
punishment at 20 years in prison, which is on the far lower end of the range. 
Appellant has not demonstrated by a preponderance of the evidence that there is a
reasonable probability that, had she reviewed the PSI report earlier, the outcome
would have been different. See Robertson, 187 S.W.3d at 482–83; Gamble, 916
S.W.2d at 93. 

          Accordingly, we overrule appellant’s first point of error.

          2.       Failure to Object to Extraneous Offense Evidence

          In her second point of error, appellant contends that her trial counsel was
ineffective in the punishment phase for having failed to object to “statements by the
prosecutor regarding extraneous offenses which were not proved by the evidence.” 
Appellant contends that “[t]he State was relieved of its burden of proof on an
extraneous issue twice.”

          First, appellant contends that her counsel failed to object to “the allegation that
the appellant solicited the killing of three people.” Appellant points out that the PSI
reflects that appellant told Officer Winkler “she had two other people to kill after
Feroz Momin.” Appellant complains that this statement “does not prove a
solicitation, as it did not say she asked Winkler to do it.” Appellant complains that
“at no point in the PSI was the third targeted person identified”; however, the State
asserted at the hearing that the person who outbid appellant on appellant’s foreclosed
home was the third person.

          Second, appellant contends that her counsel failed “to hold the State to its
burden of proof . . . during cross-examination of one of the defense witnesses, Shariz
Ajaz,” as follows:

          [State]:        [Appellant] also had knowledge of at least a fairly large

auto theft ring that she wanted to have cars stolen, work
with other people? [sic] Did you know about that? 
          [Ajaz]:         No, sir.
[State]:You have no idea or personal knowledge of the auto theft 
 ring that she’s familiar with?
          [Ajaz]:         No, sir.

 
          Appellant complains that, although the PSI report reflects that she asked
Officer Winkler to help her obtain papers if her friend stole a car for her, there are no
terms in the PSI report that suggest that she had knowledge of “a fairly large auto
theft ring.” Appellant complains that counsel failed to object to this characterization
by the State as well to the State’s assurance that this alleged “extraneous criminal
conspiracy” was “a true fact.”

          Texas Code of Criminal Procedure article 37.07, section 3(a)(1), provides as
follows, in relevant part:

Regardless of the plea and whether the punishment be assessed by the
judge or the jury, evidence may be offered by the state and the defendant
as to any matter the court deems relevant to sentencing, including but
not limited to the prior criminal record of the defendant, his general
reputation, his character, an opinion regarding his character, the
circumstances of the offense for which he is being tried, and,
notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other
evidence of an extraneous crime or bad act that is shown beyond a
reasonable doubt by evidence to have been committed by the defendant
or for which he could be held criminally responsible, regardless of
whether he has previously been charged with or finally convicted of the
crime or act. . . . 

 
Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2008). 

          The Court of Criminal Appeals has held that section 3(a)(1) “does not prohibit
a trial court . . . from considering extraneous misconduct evidence in assessing
punishment just because the extraneous misconduct has not been shown to have been
committed by the defendant beyond a reasonable doubt, if that extraneous misconduct
is contained in a PSI.” Smith v. State, 227 S.W.3d 753, 763 (Tex. Crim. App. 2007).

          Here, the PSI report reflects that appellant solicited Officer Winkler to kidnap,
hold for ransom, and then murder Momin. Appellant then stated that “she had two
other people to kill after” Momin. Appellant then drove with Officer Winkler to
Sugarland, where appellant showed him the home of Dhuka, her former next-door
neighbor. Appellant explained that Dhuka was responsible for the loss of appellant’s
house because Dhuka had brought someone in to bid against appellant on the house. 
Appellant then made arrangements for Officer Winkler to kidnap, hold for ransom,
and kill Dhuka. The PSI report also reflects that appellant then told Officer Winkler
that she “wanted the bid dropped on her house.” Because Dhuka did not make the
bid, but had allegedly brought someone else in who was actually holding the bid, the
rational inference is that the person holding the bid was the third person. See id. at
759 (holding that PSI must provide trial court with some basis for rational
inferences).

          In addition, the PSI report contains appellant’s discussion with Officer Winkler
in which she told him that her kids needed a car, and that her friend would steal a car
for her, but that he had lost his contacts to obtain the necessary documentation for the
car. Appellant asked Officer Winkler if he would get the documents for her, and he
agreed. 

 
          Because this evidence has a basis “contained in the PSI,” the trial court was not
prohibited from considering the extraneous misconduct. See id. at 763. Hence, even
if we conclude that defense counsel’s performance was deficient by failing to object,
appellant has not shown that she was prejudiced. See Andrews, 159 S.W.3d at 101;
Rylander, 101 S.W.3d at 110–11.

          Appellant contends that there is a reasonable probability that, but for counsel’s
failure to object, appellant “would have received a lighter sentence.” Appellant
complains that “[t]he offense of Solicitation was complete without the need for any
violence to be initiated or any money to change hands” and that “appellant’s criminal
conduct really consisted of just talking,” yet she was assessed punishment at “well
over the minimum.” Appellant contends that “[t]he third solicitation and alleged links
to auto theft ring easily could have spurred the judge to assess a higher term of years
than she would have in the absence of such evidence.”

          In light of the evidence showing that appellant solicited the kidnapping and
murders of two people, we cannot conclude that there is a reasonable probability that,
but for the identity of the third person and appellant’s involvement in auto theft, the
outcome would have been different. Again, the punishment range for appellant’s
conviction for the first-degree felony offense of solicitation of capital murder is
confinement for five to 99 years, or life. See Tex. Penal Code Ann. § 12.32
(Vernon 2003). Here, the trial court assessed punishment at 20 years in prison, which
is on the far lower end of the range.

          We cannot conclude that appellant has shown that there is a reasonable
probability that, but for counsel’s lack of objections, the result of the sentencing
would have been different. See Strickland, 466 U.S. at 694, 104 S. Ct. 2068. 

          In sum, after reviewing the totality of defense counsel’s representation and
employing the strong presumption that counsel’s conduct might reasonably be
considered sound trial strategy, as we must, we conclude that appellant has not met
her burden under Strickland to show that her counsel was ineffective. See Robertson,
187 S.W.3d at 482–83; Gamble, 916 S.W.2d at 93. 

          Accordingly, we overrule appellant’s second point of error. 

Conclusion

          We affirm the judgment of the trial court.





 

                                                             Laura Carter Higley

                                                             Justice



Panel consists of Justices Jennings, Keyes, and Higley.



Do not publish. See Tex. R. App. P. 47.2(b).