**Opinion issued January 12, 2016**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-15-00444-CR**

**NO. 01-15-00445-CR**

**NO. 01-15-00446-CR**

———————————

**BRANDON TODERICK JOHNSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1378279, 1458347 & 1458348**

**MEMORANDUM OPINION**

Appellant, Brandon Toderick Johnson, pleaded guilty to three separate aggravated-robbery offenses without a punishment recommendation.[1] Following a presentence investigation, the trial court sentenced Appellant to 40 years in prison for each offense, with the sentences to run concurrently. On appeal, Appellant raises two issues. Appellant asserts that his pleas were involuntary, and he contends that the evidence was insufficient to support all three judgments of conviction.

We affirm in each appeal.

**Background**

Appellant was indicted for three first-degree felony offenses. In the first indictment, Appellant was charged with the capital murder of Hamid Waraich. The indictment read, as follows: "[O]n or about February 18, 2013, [Appellant] did then and there unlawfully, while in the course of committing and attempting to commit the robbery of Hamid Waraich, intentionally cause the death of Hamid Waraich by shooting the complainant with a deadly weapon, namely a firearm."

The second indictment charged Appellant with the aggravated robbery of Sirajuddin Hudani. The indictment stated that, "on or about February 7, 2013," Appellant "while in the course of committing theft of property owned by

---

[1]     *See* TEX. PENAL CODE ANN. § 29.02(a) (Vernon 2011).

Sirajuddin Hudani, and with intent to obtain and maintain control of the property, intentionally and knowingly threaten[ed] and place[d] Sirajuddin Hudani in fear of imminent bodily injury and death," and Appellant "use[d] and exhibit[ed] a deadly weapon, namely a firearm."

Lastly, Appellant was charged with the aggravated robbery of Jose Salas. In that case, the indictment read as follows: "[O]n or about January 22, 2013," Appellant, "while in the course of committing theft of property owned by Jose Salas, and with intent to obtain and maintain control of the property, intentionally and knowingly threaten[ed] and place[d] Jose Salas in fear of imminent bodily injury and death," and Appellant "use[d] and exhibit[ed] a deadly weapon, namely a firearm."

With respect to the capital murder of Hamid Waraich, Appellant pleaded guilty to the reduced charge of aggravated robbery. Appellant also pleaded guilty to the other two aggravated-robbery offenses. Appellant signed a plea document entitled "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession." The stipulated facts in each document mirror the allegations contained in each indictment.

The plea document also states that "I understand the above allegations and I confess that they are true and that the acts alleged above were committed on [the respective date for each offense as alleged in the indictment]." The Waiver of

3

Constitutional Rights, Agreement to Stipulate, and Judicial Confession further recites: "In open court I consent to the oral and written stipulation of evidence in this case. . . ." Appellant signed the plea document, and his signature was sworn and subscribed before a deputy district clerk.

Appellant's defense attorney also signed the document, confirming that he had discussed the document and its consequences with Appellant. The attorney further confirmed that he believed Appellant knowingly and voluntarily signed the document after their discussion. An assistant district attorney also signed the document, consenting to and approving Appellant's waiver of trial by jury and stipulation of evidence. The trial court's signature is also on the plea document, indicating that Appellant had knowingly and voluntarily made the plea.

In another document entitled "Admonishments," Appellant initialed each admonishment paragraph in the document. In one admonishment, Appellant specifically acknowledged that he had "read the indictment and committed each and every element alleged." Appellant's signature on the document was sworn to by the district clerk. Appellant's counsel also signed the admonishment document as did the trial court.

At the plea hearing—held the same day Appellant had signed the plea documents—the trial court asked Appellant, "Do you know the details of each of these indictments or do I need to read them to you?" Appellant indicted that he

4

knew the details of the indictments and told the trial court that it did not need to read them to him. The trial court then asked, "To these three charges of aggravated robbery, how do you plead, guilty or not guilty?" Appellant replied, "Guilty."

The trial court orally admonished Appellant regarding the consequences of his plea. The trial court determined that that Appellant had voluntarily pleaded guilty, ascertained that Appellant knew he was giving up his right to have a jury decide whether he was guilty, and ensured that Appellant understood the range of punishment. The following exchange then occurred between the trial court and Appellant:

> Now, even though you're pleading guilty in each of these offenses, the State still must present some evidence of your guilt. They do that by signing all these sets of papers along with you and your attorney. These first pages of each of these are called waivers of constitutional rights, agreement to stipulate and judicial confession. They each tell you what your rights are that we've talked about and what you're charge with. The next page to each of these—and I'm going to show them each to you—says that you're asking the Court to assess your punishment after we do the sentencing hearing. And then it has your signature. Are those your signatures?
> [Appellant]: Yes, sir.
>
> THE COURT: And is this your signature here also?
>
> [Appellant]: Yes, sir.
>
> THE COURT: All right. Did you understand by signing each of these that you were giving up those rights and admitting to each of these aggravated robberies?
>
> [Appellant]: Yes, sir.

THE COURT: The pages after that in each of these offenses are admonishments which explains everything to you in writing. Are those your initials there?

[Appellant]: Yes, sir.

THE COURT: Did you understand all that information?

[Appellant]: Yes, sir.

The pages after that in each of these offenses are admonishments which explains [sic] everything to you in writing. Are those your initials there?

[Appellant]: Yes, sir.

THE COURT: Did you understand all that information?

[Appellant]: Yes, sir.

[The State]: Offer State's 1 in each case, Your Honor.

[Defense counsel]: No objections, Your Honor.

THE COURT: All right. No objection, they will each be admitted. Based upon your pleas of guilty in each of these offenses, I will find there's sufficient evidence to find you guilty of aggravated robbery in each of these offenses. . . .

The trial court then stated that it would withhold making a guilty finding in each case until the sentencing hearing. The trial court ordered preparation of a presentence investigation (PSI) report. The trial court explained to Appellant that it would consider the report in determining his sentences.

At that point, the trial court asked the State whether there would be an allocution, and the State responded affirmatively. The trial court then engaged in a

6

colloquy with Appellant regarding his role in the commission of each of the three offenses.

After completion of the PSI, the trial court conducted a sentencing hearing. The State offered the PSI report into evidence without objection by Appellant. The PSI report states that Appellant admitted to the police that he was the getaway driver with respect to the aggravated robbery of the cellular phone store in which Waraich was killed on February 18, 2013. Appellant had remained in the car while Eric Washington and Johntay Gibson went into the store, committed the robbery, and killed Waraich. The report indicates that Appellant told police that he knew Washington and Gibson were planning to commit robbery before they went into the store. The PSI report also states that Appellant admitted to police that he had served as the lookout for the aggravated robbery committed at a McDonald's on February 7, 2013 in which Jose Salas was the complainant.

With respect to the robbery of Sirajuddin Hudani on January 22, 2013, at another cellular phone store, the PSI report states that Johntay Gibson's brother, Joseph Davis, told police that Appellant and Gibson indicated to him, shortly after robbing Salas, that they had "hit a lick." Appellant was identified on surveillance video from a Walmart store using a credit card stolen in the robbery less than two hours after the robbery. The report further states that items taken from Hudani during the robbery were found in Gibson's and Appellant's apartment.

7

At the end of the sentencing hearing, the trial court found Appellant guilty of each of the three aggravated-robbery offenses and sentenced Appellant to 40 years for each offense. These appeals followed. Appellant raises two issues.

## Voluntariness of Plea

In his first issue, Appellant argues that his pleas were involuntary because he did not understand the nature and consequences of the pleas. He claims that the involuntariness of his pleas violated his due-process rights.

### A.    Legal Principles

To determine whether due-process requirements have been met when analyzing the validity of a guilty plea, we determine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). If a plea is not entered knowingly and voluntarily, it has been obtained in violation of due process and is void. *Houston v. State*, 201 S.W.3d 212, 221 (Tex. App.— Houston [14th Dist.] 2006, no pet.) (citing *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 1171 (1969)). The general rule is that a guilty plea is voluntary if the defendant was made fully aware of the direct consequences of his plea. *State v. Jimenez*, 987 S.W.2d 886, 888 (Tex. Crim. App. 1999).

A trial court must admonish a defendant, either orally or in writing, before accepting a guilty plea. TEX. CODE CRIM. PROC. ANN. art. 26.13(a), (d) (Vernon

8

Supp. 2015). When the record reflects that the trial court gave these admonishments, a prima facie showing is made that the defendant made the plea knowingly and voluntarily. *Mallett v. State*, 65 S.W.3d 59, 64 (Tex. Crim. App. 2001); *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998). The burden then shifts to the defendant to establish that, notwithstanding the statutory admonishments, he did not understand the consequences of his plea. *Martinez*, 981 S.W.2d at 197. When considering the voluntariness of a guilty plea, we examine the record as a whole. *Id.* A defendant who attests at the original plea hearing that his plea is made knowingly and voluntarily bears a heavy burden on appeal to show that he did not understand the nature and consequences of his plea. *See Thornton v. State*, 734 S.W.2d 112, 113 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd).

Here, Appellant was admonished both orally and in writing before the trial court accepted his guilty pleas. Thus, Appellant has the "heavy burden" to demonstrate that his pleas were involuntary because he did not understand their nature or consequences. *See id.*

**B.    Analysis**

To support his involuntariness assertion, Appellant cites the colloquy between him and the trial court after he had pleaded guilty to each offense and had

been admonished by the trial court. Appellant asserts that the colloquy shows that he did not understand the nature or consequences of his pleas.

During the colloquy, Appellant told the trial court that he had been the getaway driver for the aggravated robbery committed by, Gibson and Washington, during which Hamid Waraich was killed. Appellant stated he had waited in the car while Gibson and Washington went into a cellular phone store, committed robbery, and shot Waraich. Appellant stated that he did not know before Gibson and Washington went into the store that they had a gun or that they intended to commit robbery or murder. Appellant said that Gibson and Washington told him what they had done when they got back into the car. Appellant stated that he drove away, helping Gibson and Washington to flee.

Appellant also told the trial court that he acted as the lookout with respect to the aggravated robbery of Jose Salas. Appellant admitted to the trial court that he knew in advance of the plan to rob the McDonald's where Salas was a manager. Appellant also admitted that he received $2,000 for acting as the lookout.

To support his involuntariness claim, Appellant emphasizes in particular the portion of the colloquy in which he discussed the aggravated robbery of Sirajuddin Hudani. During the colloquy, Appellant admitted to using a credit card obtained in the robbery, but he denied playing any role in the robbery itself. Appellant cites the following portions of the colloquy:

10

[Defense counsel]: Are you telling the Court that you actually participated in the aggravated robbery or that you knew that an aggravated robbery had been committed and you used the stolen merchandise?

THE DEFENDANT: I used the stolen merchandise.

[Defense counsel]: So, had you–did you know that an aggravated robbery had been committed.

THE DEFENDANT: Yes, sir.

THE COURT [to the State]: Do you have questions?

[The State]: Are you saying that you were not there at the aggravated robbery?

THE DEFENDANT: Correct.  I wasn't there.

[The State]: Who was part of that aggravated robbery?

THE DEFENDANT: Gibson—'cause that's where I got the credit card from.  And I use—I did use the credit card.  And I wasn't the only one who—

[The State]: Go ahead.  Who else—who else used the credit card?

THE DEFENDANT: Okay.  I used one of the credit cards that—that was stolen from wherever it was tooken [sic] from.  And his brother used the one.  And the other dude that was with us, he used the one too.  So, I'm not understanding like why it would be aggravated robbery if I used a stolen credit card.

[The State]: Are you aware that [Gibson's brother] Joseph Davis would come to court and testify that you and [Gibson] told him you had just hit a lick [committed a robbery].

THE DEFENDANT: That's not—I didn't say that.

11

[Defense counsel]: But you were aware that the credit cards were stolen during the course of an aggravated robbery?

THE DEFENDANT: Yes, sir. Correct.

Appellant asserts that the foregoing portions of the colloquy, relating to all three offenses, demonstrate that he did not understand the nature or the consequences of his pleas. In his brief, Appellant avers,

> While he did admit to other acts which could make him a party to aggravated robbery in each of the three cases, [Appellant] did not stop at that point. When questioned about his criminal responsibility in . . . the robbery of Sirajuddin Hudani, Appellant responded in a way that shows he did not understand that a party to an offense bears the same criminal responsibility as the principal actors.

Appellant avers that this lack of understanding undermines the voluntariness of his pleas. He asserts that the trial court erred by accepting his pleas because the record reflects that he did not "fully understand the meaning and the consequences of the pleas[s]."[2]

---

[2] Here, Appellant never requested in the trial court to withdraw his guilty pleas. When it acts as the fact finder in a case, a trial court is not required to withdraw a defendant's guilty plea sua sponte, even when evidence is presented raising an issue regarding a defendant's guilt. *See Mendez v. State*, 138 S.W.3d 334, 339, 350 (Tex. Crim. App. 2004); *Aldrich v. State*, 53 S.W.3d 460, 467 (Tex. App.— Dallas 2001), *aff'd*, 104 S.W.3d 890 (Tex. Crim. App. 2003). Instead, the trial court's duty is to consider all of the evidence submitted and then find a defendant guilty as charged, guilty of a lesser-included offense, or not guilty, as the required by the evidence. *See Aldrich*, 53 S.W.3d at 467. Thus, as Appellant acknowledges, the trial court here had no duty to withdraw sua sponte Appellant's guilty pleas.

Here, Appellant has not met his burden to show that his pleas were involuntary. When viewed as a whole, the record demonstrates that Appellant understood the nature of the charges and the consequences of his pleas.

During the taking of the pleas, the trial court told Appellant that he had been charged by indictment with two offenses of aggravated robbery and with one charge of capital murder, which the State had requested be reduced to aggravated robbery. The trial court asked Appellant, "Do you know the details of each of these indictments or do I need to read them to you?" Appellant indicated that he was familiar with the details of the offenses as charged in the indictments.

Additionally, the stipulated facts contained in the plea documents mirror the allegations contained in each respective indictment. Appellant signed these documents, attesting, "I understand the above allegations and I confess that they are true and that the acts alleged above were committed on [the respective date for each offense as alleged in the indictment]." Similarly, Appellant signed written admonishments in each case in which he further attested that he had "read the indictment and committed each and every element alleged."

Having been unequivocally told by Appellant that he understood the charges against him, the trial court may have reasoned that Appellant sought, during the colloquy, to minimize his role in the offenses to obtain a lower sentence.

Appellant had, immediately before the colloquy, been told by the trial court that it could ultimately sentence him to as much as life in prison.

The record also shows that the trial court admonished Appellant, orally and in writing, of the consequences of his plea. Appellant indicated, orally and in writing, that he understood the consequences of waiving his constitutional and statutory rights. In the written admonishments, Appellant initialed paragraphs stating that he had "freely, knowingly, and voluntarily executed this statement in open court" and that he "fully under[stood] the consequences of his plea[s]."

The trial court also informed Appellant that the range of punishment for each offense was "not less than five years, nor more than 99 years or life in prison and a fine not to exceed $10,000." Appellant indicated that he understood that the trial court could set his punishment anywhere in that range.

Given the record as a whole, Appellant has not carried his burden of showing he did not fully understand the charges against him or the consequences of his guilty pleas. Moreover, we note that "[d]ue process of law is not denied by a conviction based on a plea of guilty that is accompanied by 'a strong factual basis for the plea demonstrated by the State and [a defendant]'s clearly expressed desire to enter it despite his professed belief in his innocence.'" *Mendez v. State*, 138 S.W .3d 334, 344 (Tex. Crim. App. 2004) (quoting *Alford*, 400 U.S. at 38, 91 S. Ct. at 167). Here, Appellant clearly expressed his desire to plead guilty to all three

offenses. In addition, the PSI report—admitted into evidence before the trial court found Appellant guilty—contained evidence of Appellant's guilt. In particular, with respect to the robbery of Sirajuddin Hudani, the report shows that a witness, Joseph Davis, told police that Appellant and Gibson made a remark, indicating that they had just committed a robbery. This remark was made less than two hours after the robbery of Hudani. The remark was made at the Walmart store where Appellant used Hudani's stolen credit card. Items stolen from Hudani were also found in Appellant's and Gibson's apartment. Thus, given Appellant's express desire to plead guilty and the evidence, Appellant has not shown that he was denied due process.

We hold that Appellant has not shown that he was denied due process because his pleas were involuntary or that that the trial court erred with respect to its handling of the pleas.

We overrule Appellant's first issue in each appeal.

## Sufficiency of Evidence to Support Conviction

In his second issue in each appeal, Appellant contends that the evidence in was insufficient to support his convictions.

**A.    Applicable Legal Principles**

Article 1.15 of the Code of Criminal Procedure provides that when a defendant waives his right to a jury trial in a felony case:

> [I]t shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same.

TEX. CODE CRIM. PROC. ANN. art. 1.15 (Vernon 2005). The "[e]vidence offered in support of a guilty plea may take many forms," including a "written stipulation of what the evidence against him would be," and such a stipulation "will suffice to support the guilty plea so long as it embraces every constituent element of the charged offense." *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009).

A defendant who pleads guilty need not concede the veracity of the evidence to which he stipulates, but if he does, the court will consider the stipulation to be a judicial confession. *See Stone v. State*, 919 S.W.2d 424, 426 (Tex. Crim. App. 1996). The evidence does not have to establish the defendant's guilt beyond a reasonable doubt but must embrace every element of the offense charged. *Staggs v. State*, 314 S.W.3d 155, 159 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

A person commits robbery if, in the course of committing theft, and with intent to obtain or maintain control of property, he intentionally or knowingly places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2011). Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. *See id.* § 31.03(a) (Vernon Supp. 2015). A person commits aggravated robbery when he commits robbery and uses

16

or exhibits a deadly weapon. *See id.* § 29.03(a)(2) (Vernon 2011). By definition, a firearm is a deadly weapon. *See id.* § 1.07(a)(17)(A) (Vernon Supp. 2015).

## B.    Analysis

In each case, Appellant signed a document entitled "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession." The stipulated facts in each document mirror the allegations in the respective indictment. With respect to the offenses against Hudani and Salas, Appellant confessed that he "unlawfully, while in the course of committing theft of property owned by [the respective complainant], and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place [him] in fear of imminent bodily injury and death, and [Appellant] did then and there use and exhibit a deadly weapon, namely, a firearm." With respect to the offense against Waraich, Appellant confessed that he "unlawfully while in the course of committing and attempting to commit the robbery of Hamid Waraich, intentionally cause the death of Hamid Waraich by shooting the complainant with a deadly weapon, namely a firearm."

Appellant waived "the right of trial by jury . . . [and] the appearance, confrontation, and cross-examination of witnesses, and my right against self-incrimination." He acknowledged, "I understand the above allegations and I confess that they are true and that the acts alleged above were committed on [the

respective offense date]." In addition, in the written admonishments, Appellant consented to "the oral and written stipulations of evidence in this case" and acknowledged that he "read the indictment and committed each and every element alleged."

In short, the record in each case shows that Appellant signed a sworn written statement covering all elements of the charged offense, admitting his culpability and acknowledging that the allegations against him were true and correct. Appellant also "acknowledged, independently of his guilty plea, that he 'committed each and every element alleged.'" *Cardenas v. State*, 403 S.W.3d 377, 381 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 423 S.W.3d 396 (Tex. Crim. App. 2014) (quoting *Menefee*, 287 S.W.3d at 13). "When an appellant has provided a valid judicial confession to all of the elements of the offense, the record need not provide further proof." *Id.* (citing *Menefee*, 287 S.W.3d at 13–14, 17–18).

Appellant argues that the evidence was not sufficient because his statements during the colloquy either negated or did not address certain elements of the offenses. He asserts that these statements render the evidence insufficient to sustain his convictions. We disagree.

When presented with conflicting evidence after entry of a guilty plea, the trial court may find the accused guilty, not guilty, or guilty of a lesser offense, as

the facts require. *See Thomas v. State*, 599 S.W.2d 823, 824 (Tex. Crim. App. [Panel Op.] 1980); *Rivera v. State*, 123 S.W.3d 21, 33 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). As a result, the trial court was entitled to resolve the conflict between Appellant's testimony and his judicial confessions. Accordingly, the trial court could find Appellant guilty despite his statements during the colloquy. *See Thomas*, 599 S.W.2d at 824; *Rivera*, 123 S.W.3d at 33. The judicial confessions supplied sufficient evidence to prove the elements for each aggravated-robbery offense. [3]

We overrule Appellant's second issue in each case.

## Conclusion

We affirm the judgments of the trial court in each appeal.


Laura Carter Higley
Justice

Panel consists of Justices Higley, Huddle, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[3] As the State points out, the PSI report, admitted without objection at the sentencing hearing, also contained evidence of Appellant's guilt for each offense. *See Stewart v. State*, 12 S.W.3d 146, 148 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (rejecting argument that evidence of guilt must be presented during "guilt/innocence phase" and noting that "article 1.15 does not distinguish between evidence offered at the guilt/innocence phase and the punishment phase").